STATE OF NORTH CAROLINA v. NICHOLAS BRADY HEIEN

No. COA11-52

(Filed 16 August 2011)

**Search and Seizure—traffic stop—one malfunctioning brake light—no statutory violation**

> The trial court erred by denying defendant's motion to suppress evidence of cocaine possession and transportation where the initial traffic stop was based on a malfunctioning brake light. Vehicles are required by N.C.G.S. § 20-129(g) to have only one functioning stop lamp or "brake light," as did defendant's vehicle, and there was no violation of N.C.G.S. §§ 20-129(d) (rear lamps) or 20-183.3 (safety inspections).

Appeal by Defendant from an order dated 25 March 2010 by Judge Vance Bradford Long and judgments entered 26 May 2010 by Judge A. Moses Massey in Superior Court, Surry County. Heard in the Court of Appeals 24 May 2011.

*Attorney General Roy Cooper, by Special Deputy Attorney General J. Allen Jernigan, for the State.*

*Michele Goldman for Defendant.*

McGEE, Judge.

Nicholas Brady Heien (Defendant) pled guilty to attempted trafficking in cocaine by transporting and by possession on 26 May 2010. The trial court determined Defendant's prior record level to be a Level I, and sentenced Defendant to two consecutive prison terms of ten months to twelve months. Defendant appeals.

Sergeant Matt Darisse (Sergeant Darisse), of the Surry County Sheriff's Office, testified that he was "conducting criminal interdiction" on Interstate Highway 77 (I-77) when he observed a passing vehicle (the vehicle) driven by a man who appeared to be "stiff and nervous." Sergeant Darisse pulled onto I-77, "observed the driving of the vehicle, and noticed that [the] vehicle approach[ed] a slower moving vehicle, appl[ied] its brakes[,] and [that] the right side brake light was out." Sergeant Darisse testified that, upon observing that the vehicle's right brake light was out, he "put [his] blue lights on to pull the vehicle over."

STATE v. HEIEN

[214 N.C. App. 515 (2011)]

When Sergeant Darisse approached the vehicle, he told the driver, Maynor Javier Vasquez (Mr. Vasquez), that he had been "pulled . . . over for the brake light being out" and asked Mr. Vasquez to produce his driver's license and registration. Defendant, the only passenger, was lying in the back seat of the vehicle. Because Mr. Vasquez appeared nervous and was slow to produce the requested documents, Sergeant Darisse asked Mr. Vasquez to step out of the vehicle and wait between the vehicle and Sergeant Darisse's patrol car while Sergeant Darisse checked Mr. Vasquez's license and registration.

Deputy Mark Ward (Deputy Ward), of the Surry County Sheriff's Office, arrived to assist Sergeant Darisse with the traffic stop. Deputy Ward briefly questioned Defendant about where Defendant and Mr. Vasquez were going. Defendant told Deputy Ward they were driving to Kentucky. Mr. Vasquez had already told Sergeant Darisse that he and Defendant were driving to West Virginia. Sergeant Darisse gave Mr. Vasquez a warning ticket for an improperly functioning brake light and returned Mr. Vasquez's license and registration. Sergeant Darisse testified that, at that point, Mr. Vasquez was free to leave. However, upon Sergeant Darisse's request, Mr. Vasquez consented to additional questioning. Sergeant Darisse asked Mr. Vasquez if he had any contraband in the vehicle. Mr. Vasquez replied that he did not. Sergeant Darisse then asked Mr. Vasquez if he could search the vehicle. Mr. Vasquez replied that, because the vehicle belonged to Defendant, Sergeant Darisse would have to ask Defendant.

Sergeant Darisse asked Defendant, who was still lying in the back seat, for consent to search the vehicle. Defendant consented to a search and exited the vehicle. Sergeant Darisse's search of the vehicle revealed cocaine.

Defendant filed a motion to suppress dated 21 January 2010 and an amended motion to suppress dated 4 March 2010, both of which the trial court denied in an order dated 25 March 2010. Defendant entered pleas of guilty to charges of attempted trafficking in cocaine by transportation and by possession, but Defendant reserved the right to appeal the denial of his motion to suppress. Defendant filed a petition for writ of certiorari which was granted by our Court on 14 September 2010.

Defendant first argues that the trial court erred by concluding that Sergeant Darisse's initial stop of the vehicle "was constitutional, as [Sergeant] Darisse had a reasonable and articulable suspicion that

the . . . vehicle and the driver were violating the laws of this State by operating a motor vehicle without a properly functioning brake light."

> Generally, an appellate court's review of a trial court's order on a motion to suppress "is strictly limited to a determination of whether its findings are supported by competent evidence, and in turn, whether the findings support the trial court's ultimate conclusion." Where, however, the trial court's findings of fact are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal.

*State v. Roberson*, 163 N.C. App. 129, 132, 592 S.E.2d 733, 735-36 (2004) (citations omitted). "[C]onclusions of law drawn from the findings of fact are . . . reviewable *de novo.*" *Huyck Corp. v. Town of Wake Forest*, 86 N.C. App. 13, 15, 356 S.E.2d 599, 601 (1987) (citations omitted).

"A law enforcement officer may stop and briefly detain a vehicle and its occupants if the officer has reasonable, articulable suspicion that criminal activity may be afoot." *State v. Jackson*, 199 N.C. App. 236, 241, 681 S.E.2d 492, 496 (2009) (citation omitted). However, an officer's determination regarding potential criminal activity must be objectively reasonable, and an officer's mistaken belief that a defendant has committed a traffic violation is not an objectively reasonable justification for a traffic stop. *See State v. McLamb*, 186 N.C. App. 124, 127-28, 649 S.E.2d 902, 904 (2007) (holding that an officer's mistaken belief that the defendant was speeding was not an objectively reasonable purpose for a traffic stop). A passenger in a vehicle which is stopped by a law enforcement officer is seized within the meaning of the Fourth Amendment to the United States Constitution, and may accordingly challenge the constitutionality of the initial stop. *See Jackson*, 199 N.C. App. at 239-41, 681 S.E.2d at 495-96.

In the present case, the trial court made an unchallenged finding of fact that Sergeant Darisse's initial stop of the vehicle was based upon his observation that "the right brake light of the vehicle [did] not . . . function as the left brake light of the vehicle came on as the . . . vehicle slowed." Defendant argues that Sergeant Darisse did not have reasonable, articulable suspicion to stop the vehicle because the stop was based upon the mistaken belief that the malfunctioning brake light constituted a violation of N.C. Gen. Stat. § 20-129(g). The State, however, argues that Sergeant Darisse had reasonable, articulable suspicion to stop the vehicle because the malfunctioning brake light constituted a violation of N.C. Gen. Stat. § 20-129(d) and N.C. Gen. Stat. § 20-183.3. Based on the language of the statutes, we hold that

the malfunction of a single brake light, where a vehicle has at least one functioning brake light, is not a violation of N.C.G.S. § 20-129(g), N.C.G.S. § 20-129(d), or N.C.G.S. § 20-183.3.

> In matters of statutory construction, our primary task is to ensure that the purpose of the legislature, the legislative intent, is accomplished. *Hunt v. Reinsurance Facility*, 302 N.C. 274, 288, 275 S.E.2d 399, 405 (1981). Legislative purpose is first ascertained from the plain words of the statute. *See Burgess v. Your House of Raleigh*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990). Moreover, we are guided by the structure of the statute and certain canons of statutory construction. *See, e.g., Media, Inc. v. McDowell County*, 304 N.C. 427, 430-31, 284 S.E.2d 457, 461 (1981) ("statutes dealing with the same subject matter must be construed *in pari materia*"); *Builders, Inc. v. City of Winston-Salem*, 302 N.C. 550, 556, 276 S.E.2d 443, 447 (1981) ("It is presumed that the legislature intended each portion to be given full effect and did not intend any provision to be mere surplusage").

*Electric Supply Co. v. Swain Electric Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991).

### I. N.C. Gen. Stat. § 20-129(g)

Defendant contends that Sergeant Darisse mistakenly believed that the malfunctioning brake light constituted a violation of N.C.G.S. § 20-129(g), which states:

> (g) No person shall sell or operate on the highways of the State any motor vehicle, motorcycle or motor-driven cycle, manufactured after December 31, 1955, unless it shall be equipped with *a stop lamp* on the rear of the vehicle. *The stop lamp* shall display a red or amber light visible from a distance of not less than 100 feet to the rear in normal sunlight, and shall be actuated upon application of the service (foot) brake. *The stop lamp* may be incorporated into a unit with one or more other rear lamps.

N.C. Gen. Stat. § 20-129(g) (2009) (emphasis added). Initially, we note that the language of N.C.G.S. § 20-129(g) demonstrates that the "stop lamp" required under that statute is synonymous with what is colloquially called a "brake light." *See* N.C.G.S. § 20-129(g) ("The stop lamp . . . shall be actuated upon application of the service (foot) brake.") Because Sergeant Darisse testified that the vehicle's "right side brake light was out[,]" and the trial court's 25 March 2010 order and both parties' briefs use the term "brake light," we will use the terms "brake

light" and "stop lamp" interchangeably. The use of the articles "a" and "the" before the singular "stop lamp" throughout N.C.G.S. § 20-129(g) clearly conveys that, under the statute, only one stop lamp is required on the rear of a vehicle. Thus, the plain language of subsection (g) requires only one stop lamp on a vehicle.

In the present case, the trial court made an uncontested finding of fact that, at the time of the initiation of the traffic stop, "the left brake light of the vehicle came on as the . . . vehicle slowed." Because the *left* brake light was functioning properly, there was no violation of N.C.G.S. § 20-129(g) at the time of the initial stop.

## II. N.C. Gen. Stat. § 20-129(d)

The State argues, however, that Sergeant Darisse had reasonable, articulable suspicion to stop the vehicle because the malfunctioning right brake light constituted a violation of N.C.G.S. § 20-129(d), a subsection of the statute that requires "all originally equipped rear lamps or the equivalent [to be] in good working order[.]" In relevant part, N.C.G.S. § 20-129(a) and (d) provide:

(a) When Vehicles Must Be Equipped.—Every vehicle upon a highway within this State shall be equipped with lighted . . . rear lamps as required for different classes of vehicles, and subject to exemption with reference to lights on parked vehicles as declared in G.S. 20-134:

(1) During the period from sunset to sunrise,

(2) When there is not sufficient light to render clearly discernible any person on the highway at a distance of 400 feet ahead, or

. . . .

(4) At any other time when windshield wipers are in use as a result of smoke, fog, rain, sleet, or snow, or when inclement weather or environmental factors severely reduce the ability to clearly discern persons and vehicles on the street and highway at a distance of 500 feet ahead[.]

. . . .

(d) Rear Lamps.—Every motor vehicle . . . shall have all originally equipped rear lamps or the equivalent in good working order, which lamps shall exhibit a red light plainly visible under normal atmospheric conditions from a distance of 500 feet to the rear of such vehicle.

STATE v. HEIEN

[214 N.C. App. 515 (2011)]

It is clear from the language of subsections (a) and (d) that the "rear lamps" provided for therein are separate and distinct from the "stop lamp" provided for in subsection (g). Rear lamps must be lighted during "the period from sunset to sunrise," when "there is not sufficient light to render clearly discernible any person on the highway at a distance of 400 feet ahead," and at "any other time when windshield wipers are in use as a result of smoke, fog, rain, sleet, or snow, or when inclement weather or environmental factors severely reduce the ability to clearly discern persons and vehicles on the street and highway at a distance of 500 feet ahead[.]" N.C.G.S. § 20-129(a)(1), (2) and (4). Additionally, rear lamps must "exhibit a red light plainly visible under normal atmospheric conditions from a distance of 500 feet to the rear of [a] vehicle." N.C.G.S. § 20-129(d). From these statutory requirements, it is apparent that the purpose of rear lamps is to make a vehicle more visible to other drivers and pedestrians during times when visibility is otherwise reduced due to nighttime, inclement weather, or similar conditions.

In contrast to "rear lamps[,]" "a stop lamp" must "display a red or amber light visible from a distance of not less than 100 feet to the rear in normal sunlight, and shall be actuated upon application of the service (foot) brake." N.C.G.S. § 20-129(g). From the requirements of N.C.G.S. § 20-129(g), it is apparent that the purpose of a stop lamp is to notify drivers and pedestrians to the rear of a vehicle that the driver of that vehicle has applied that vehicle's foot brake and that that vehicle will accordingly reduce speed. Notably, this statutory purpose can be accomplished where a vehicle is equipped with a single stop lamp.

Moreover, the statutory requirements for rear lamps differ from those of stop lamps in several significant aspects. Unlike rear lamps, which must be lighted at night, during periods of inclement weather, and during other periods of reduced visibility, stop lamps are only required to be lighted "upon application of the service (foot) brake." See N.C.G.S. § 20-129(a); N.C.G.S. § 20-129(g). Rear lamps must be "visible under normal atmospheric conditions from a distance of *500 feet* to the rear of [a] vehicle." N.C.G.S. § 20-129(d) (emphasis added). A stop lamp, however, must be "visible from a distance of not less than *100 feet* to the rear [of a vehicle] in normal sunlight[.]" N.C.G.S. § 20-129(g) (emphasis added). Finally, there is no required method of actuation for rear lamps, but a stop lamp must be lighted "upon application of the service (foot) brake." See N.C.G.S. § 20-129(a), (d) and (g). Thus, as reflected by statutory requirements applicable to each,

rear lamps and a stop lamp are distinct and the requirement for each is intended to serve a separate purpose within the statutory scheme.

Accordingly, the requirement of N.C.G.S. § 20-129(d) that "all originally equipped rear lamps or the equivalent [be] in good working order" is applicable only to the rear lamps provided for in N.C.G.S. § 20-129(a) and (d). There is no similar requirement, under N.C.G.S. § 20-129(g), that all originally equipped *stop lamps* be in good working order. In the present case, the trial court's uncontested finding of fact notes that the traffic stop was based upon Sergeant Darisse's observation that the vehicle's right brake light malfunctioned. The State's argument that, because the vehicle's right brake light malfunctioned, Sergeant Darisse had reasonable, articulable suspicion to stop the vehicle under N.C.G.S. § 20-129(d), is without merit.

### III.  N.C. Gen. Stat. § 20-183.3

The State also argues that the malfunctioning brake light constituted a "violation of the safety inspection requirements of N.C. Gen. Stat. § 20-183.3[.]" N.C. Gen. Stat. § 20-183.3 (2009) provides, in relevant part:

(a) Safety.—A safety inspection of a motor vehicle consists of an inspection of the following equipment to determine if the vehicle has the equipment required by Part 9 of Article 3 of this Chapter and if the equipment is in a safe operating condition:

. . . .

(2) Lights, as required by G.S. 20-129 or G.S. 20-129.1.

As explained above, N.C.G.S. § 20-129(g) only requires a vehicle to have a single functioning brake light. Moreover, N.C. Gen. Stat. § 20-129.1 (2009), which provides that "[b]rake lights . . . on the rear of a motor vehicle shall have red lenses so that the light displayed is red[,]" does not alter the requirement of N.C.G.S. § 20-129(g) that a vehicle be equipped with one brake light. Thus, even assuming that a violation of the inspection requirement statute was possible under the facts of the present case, Sergeant Darisse could not have had a reasonable, articulable suspicion that the malfunctioning brake light constituted a violation of that statute.

In sum, at the time of the initial stop, there was no violation of N.C.G.S. § 20-129(g), N.C.G.S. § 20-129(d), or N.C.G.S. § 20-183.3. Because the initial stop was based upon Sergeant Darisse's observation that the right brake light of the vehicle malfunctioned, the justi-

fication for the stop was objectively unreasonable, and the stop violated Defendant's Fourth Amendment rights. *See McLamb*, 186 N.C. App. at 127-28, 649 S.E.2d at 904. Accordingly, the trial court erred in denying Defendant's motion to suppress and amended motion to suppress.

We note that the holding in this case, based upon the present language of the applicable statute, makes it clear that having a single operable brake light is legally sufficient, and that a vehicle having only one operable brake light is not a valid justification for a traffic stop. The statute at issue having been enacted several decades ago, retains an antiquated definition of a stop lamp, not reflecting actual vehicle equipment now included in most automobiles. We are well aware that the role of our courts is to adjudicate the laws as enacted by the General Assembly, and only the General Assembly, as our State's policy-maker, can modify and update this outdated statutory language.

We need not address Defendant's second argument in light of our holding above. The trial court's order denying Defendant's motion to suppress and amended motion to suppress is reversed and its judgment is vacated.

Reversed and vacated.

Judges ERVIN and McCULLOUGH concur.