STATE v. HEIEN

[366 N.C. 20 (2012)]

STATE OF NORTH CAROLINA v. NICHOLAS BRADY HEIEN

No. 380PA11

(Filed 14 December 2012)

**Search and Seizure— motion to suppress cocaine—totality of circumstances—reasonable suspicion—officer's objectively reasonable mistake of law**

The Court of Appeals erred by concluding that there was no reasonable suspicion for the stop that led to defendant's convictions for attempting to traffic in cocaine by transportation and possession. The totality of circumstances revealed that there was an objectively reasonable basis to suspect that illegal activity was taking place. When the stop at issue in this case occurred, neither our Supreme Court nor our Court of Appeals had ever interpreted our motor vehicle laws to require only one properly functioning brake light. The Fourth Amendment's reasonable suspicion standard is not offended by an officer's objectively reasonable mistake of law. The case was remanded for additional proceedings.

Justice HUDSON dissenting.

Chief Justice PARKER and Justice TIMMONS-GOODSON join in dissenting opinion.

On discretionary review pursuant to N.C.G.S. § 7A 31 of a unanimous decision of the Court of Appeals, 214 N.C. App. 515, 714 S.E.2d 827 (2011), reversing an order signed on 25 March 2010 by Judge Vance Bradford Long and vacating judgments entered on 26 May 2010 by Judge A. Moses Massey, both in Superior Court, Surry County. Heard in the Supreme Court on 7 May 2012.

*Roy Cooper, Attorney General, by Derrick C. Mertz, Assistant Attorney General, for the State-appellant.*

*Michele Goldman for defendant-appellee.*

NEWBY, Justice.

In this case we must decide whether there was reasonable suspicion for the stop that led to defendant's convictions for attempting to traffic in cocaine by transportation and possession. After reviewing the totality of the circumstances, we conclude that there was an objectively reasonable basis to suspect that illegal activity was taking

place. Accordingly, we reverse the decision of the Court of Appeals and remand this case to that court for additional proceedings.

On the morning of 29 April 2009, Sergeant Matt Darisse of the Surry County Sheriff's Department performed a routine traffic stop of a vehicle in which defendant was a passenger. Sergeant Darisse was observing traffic on Interstate 77 when he noticed a Ford Escort approach a slower moving vehicle, forcing the driver of the Escort to apply the car's brakes. When the driver engaged the brakes, Sergeant Darisse saw that the right rear brake light failed to illuminate. As a result, Sergeant Darisse decided to stop the Escort. As the Escort rolled to a stop, Sergeant Darisse noticed the right rear brake light "flickered on." Sergeant Darisse informed the driver, Maynor Javier Vasquez, that he stopped the car "for a non-functioning brake light." After a few moments of conversation Sergeant Darisse informed Vasquez that he would issue a warning citation for the brake light if Vasquez's drivers' license and registration were valid. After learning that his drivers' license and registration checked out, Sergeant Darisse returned Vasquez's documents and gave him a warning ticket for the brake light.

During the stop Sergeant Darisse apparently began to suspect that the Escort might contain contraband. During conversation Vasquez informed Sergeant Darisse that defendant and he were travelling to West Virginia. Defendant, however, offered differing information regarding their ultimate destination. He stated that the duo were headed to Kentucky to pick up a friend. Based in part on this conflicting information, Sergeant Darisse decided to ask Vasquez if he could search the vehicle. Vasquez had no objection, but explained it was defendant's Escort so Sergeant Darisse should ask defendant. Sergeant Darisse then received defendant's permission to search the vehicle.

A search of the vehicle revealed, among other things, cocaine. According to Sergeant Darisse, he found "a cellophane wrapper with a white powder residue" in the door panel on the driver's side and "burnt marijuana seeds in the ashtray." Sergeant Darisse then searched a blue duffle bag in the "back hatch" area of the Escort. In "one of the side compartments" of the bag, Sergeant Darisse located "a white plastic grocery bag" containing "a sandwich bag wrapped in a paper towel." He discovered inside "the sandwich bag . . . a white powder[ed] substance . . . [that] appeared to be . . . cocaine." A field test of the white, powdered substance indicated that it was, in fact,

cocaine. Both the driver and defendant were then arrested and charged with trafficking in cocaine.

Defendant sought to suppress the evidence obtained during the search of the Escort, alleging that the stop was an illegal seizure in violation of the Fourth Amendment to the United States Constitution and Sections 19 and 20 of Article I of the North Carolina Constitution. Apparently, defendant argued that our General Statutes require a vehicle neither to have all brake lights in good working order nor to be equipped with more than one brake light, and, as a result, a traffic stop for the reason asserted here should be unconstitutional.

When the traffic stop at issue in this case occurred, Chapter 20 of our General Statutes, which addresses motor vehicles, contained several sections regulating vehicle brake lights. First, section 20-129 required that "[e]very motor vehicle . . . have all originally equipped rear lamps or the equivalent in good working order, which lamps shall exhibit a red light plainly visible under normal atmospheric conditions from a distance of 500 feet to the rear of such vehicle." N.C.G.S. § 20-129(d) (2009). That section also mandated, in language perhaps familiar when the provision was first enacted more than a half century ago, that "[n]o person shall sell or operate on the highways of the State any motor vehicle . . . unless it shall be equipped with a stop lamp on the rear of the vehicle. The stop lamp . . . shall be actuated upon application of the service (foot) brake. The stop lamp may be incorporated into a unit with one or more other rear lamps." *Id.* § 20-129(g) (2009). Second, section 20-129.1 provided that "[b]rake lights (and/or brake reflectors) on the rear of a motor vehicle shall have red lenses so that the light displayed is red." *Id.* § 20-129.1(9) (2009). Finally, section 20-183.3 also dictated that a motor vehicle safety inspection include a determination that the lights required by sections 20-129 or 20-129.1 are present and in a safe operating condition. *Id.* § 20-183.3(a)(2) (2009).

The trial court denied defendant's motion to suppress. The trial court found, among other things, that

Darisse observed the right brake light of the vehicle not to function as the left brake light of the vehicle came on as the subject vehicle slowed. Darisse upon making this observation, activated his blue light and instigated a stop of the subject vehicle.

The subject vehicle's right brake light was not functioning at the time of the instigation of the stop by observation of the video,

taken from Darisse's patrol car, which began at the time of the instigation of the stop.

Immediately prior to the vehicle coming to a complete stop on the shoulder the right brake light flickered on.

Based on its findings the trial court concluded, *inter alia*, that Sergeant Darisse had a "reasonable and articulable suspicion that the subject vehicle and the driver were violating the laws of this State by operating a motor vehicle without a properly functioning brake light" and "that the seizure . . . was constitutionally valid."

The Court of Appeals disagreed with the trial court's determination that all vehicular brake lights must function properly. *State v. Heien*, 214 N.C. App. 515, 714 S.E.2d 827, 829-31 (2011). The Court of Appeals, addressing a novel issue of statutory interpretation, employed a long statutory analysis and then held that Chapter 20 requires a motor vehicle to have only one brake light. *Id.* at ——, 714 S.E.2d at 829-31. That court explained that section 20-129 requires only " 'a' " brake light. *Id.* at ——, 714 S.E.2d at 829 (quoting N.C.G.S. § 20-129(g) (emphasis added)). The court observed that the brake light " 'may be incorporated into a unit with *one* or more other rear lamps.' " *Id.* at ——, 714 S.E.2d at 829 (quoting N.C.G.S. § 20-129(g) (emphasis added)). Given the "use of the articles 'a' and 'the' before the singular" term "stop lamp," which is used to describe a brake light throughout the statutes, the Court of Appeals reasoned that subsection 20-129(g) requires only one brake light. *Id.* at ——, 714 S.E.2d at 829. Further, the court determined that the mandate of section 20-129 that vehicles " 'have all originally equipped rear lamps or the equivalent in good working order' " does not apply to brake lights because brake lights are distinct from rear lamps. *Id.* at ——, 714 S.E.2d at 830 (quoting N.C.G.S. § 20-129(d)). Finally, the Court of Appeals explained that the vehicle inspection statute does not alter the number of brake lights required by section 20-129. *Id.* at ——, 714 S.E.2d at 831.

Then, relying on its decision in *State v. McLamb*, 186 N.C. App. 124, 649 S.E.2d 902 (2007), *disc. rev. denied*, 362 N.C. 368, 663 S.E.2d 433 (2008), the Court of Appeals held that the traffic stop was unconstitutional. *Heien*, —— N.C. App. at ——, 714 S.E.2d at 829-31. The court explained that at the time of the stop "there was no violation of N.C.G.S. § 20-129(g), N.C.G.S. § 20-129(d), or N.C.G.S. § 20-183.3." *Id.* at ___, 714 S.E.2d at 831. As a result, the court reasoned that "[b]ecause the initial stop was based upon Sergeant Darisse's observation that the right brake light of the vehicle malfunctioned, the jus-

tification for the stop was objectively unreasonable, and the stop violated [d]efendant's Fourth Amendment rights." *Id.* at ——, 714 S.E.2d at 831 (citing *McLamb*, 186 N.C. App. at 127-28, 649 S.E.2d at 904). Essentially, the court held that a police officer's mistaken belief about the requirements of the substantive traffic law is per se objectively unreasonable. And, when the factual circumstances fail to indicate a violation of the substantive law as interpreted by a reviewing court, the stop of an individual is unconstitutional.

We allowed the State of North Carolina's Petition for Discretionary Review. *State v. Heien*, 365 N.C. 545, 720 S.E.2d 389 (2012). It is important to note at the outset that the State of North Carolina has chosen not to seek review of the Court of Appeals' statutory interpretation. Accordingly, how many brake lights are required by our General Statutes and whether they must be in good working order are issues not presented to this Court; for purposes of our decision, we assume that the Court of Appeals correctly held that our General Statutes require only one brake light and that not all originally equipped brake lights must function properly. It is also worth noting that, were driving with an improperly functioning brake light a traffic violation then, without question, Sergeant Darisse would have had, at least, reasonable suspicion to conduct the stop. *E.g.*, *State v. Styles*, 362 N.C. 412, 417, 665 S.E.2d 438, 441 (2008) ("Officer Jones' observation of defendant's traffic violation gave him the required reasonable suspicion to stop defendant's vehicle."). Indeed, a routine traffic stop by an officer who observes an individual commit a traffic violation is supported by probable cause. *E.g.*, *Whren v. United States*, 517 U.S. 806, 819, 116 S. Ct. 1769, 1777, 135 L. Ed. 2d 89, 101 (1996). The question remains, however, whether an officer's mistake of law may nonetheless give rise to reasonable suspicion to conduct a routine traffic stop.

The issue presented in this case is one of first impression for this Court; however, considering a related question in *State v. Barnard*, 362 N.C. 244, 658 S.E.2d 643, *cert. denied*, 555 U.S. 914, 129 S. Ct. 264, 172 L. Ed. 2d 198 (2008), we held that an officer's mistake of law will not invalidate a stop otherwise supported by reasonable suspicion to believe an actual law was being violated. In Barnard a police officer observed an individual, who was operating a vehicle that had stopped for a red light, and then remained stopped for approximately thirty seconds after the light turned green before making a legal left turn. *Id.* at 245, 658 S.E.2d at 644. The officer decided to stop the vehicle based in part on "a perceived, though apparently non-existent, statu-

tory violation of impeding traffic." *Id.* at 248, 658 S.E.2d at 645. At the suppression hearing the officer testified also that remaining stopped for thirty seconds after a light turns green "definitely would be an indicator of impairment." *Id.* at 247, 658 S.E.2d at 645. This Court, citing *Whren* and *State v. McClendon*, 350 N.C. 630, 517 S.E.2d 128 (1999), for the proposition that the "constitutionality of a traffic stop depends on the objective facts, not the officer's subjective motivation," concluded that because the circumstances present in the case "gave rise to a reasonable, articulable suspicion that defendant may have been driving while impaired, the stop of defendant's vehicle was constitutional." 362 N.C. at 248, 658 S.E.2d at 645-46. As a result, the rule in this state is that an officer's subjective mistake of law will not cause the traffic stop to be unreasonable when the totality of the circumstances indicates that there is reasonable suspicion that the person stopped is violating some other, actual law. *Id.* The question presented today is whether a stop is likewise permissible when an officer witnesses what he reasonably, though mistakenly, believes to be a traffic violation but, this time, the conduct fails simultaneously to indicate another law is being violated. In other words, does the former still hold when the latter is absent?

Various federal and state courts have provided different answers to this question. Some courts hold that a police officer's mistaken interpretation of the applicable substantive law cannot give rise to reasonable suspicion to support a traffic stop. *E.g., United States v. McDonald*, 453 F.3d 958, 961-62 (7th Cir. 2006) (stating that an officer's decision to stop a vehicle "based on a subjective belief that a law has been broken, when no violation actually occurred, is not objectively reasonable"); *State v. Anderson*, 683 N.W.2d 818, 823-24 (Minn. 2004) (en banc) (holding "that an officer's mistaken interpretation of a statute may not form the particularized and objective basis for suspecting criminal activity necessary to justify a traffic stop"). Other courts have held that an officer's mistake of law can form the reasonable suspicion required to justify a traffic stop, so long as the mistake is objectively reasonable. *E.g., United States v. Sanders*, 196 F.3d 910, 913 & n.3 (8th Cir. 1999) (concluding a traffic stop was constitutional when the officer reasonably believed the individual was violating the traffic law, even though the officer's belief about the law's requirements may have been incorrect); *State v. Rheinlander*, 286 Ga. App. 625, 626, 649 S.E.2d 828, 829-30 (2007) (" 'If the officer acting in good faith believes that an unlawful act has been committed, his actions are not rendered improper by a later legal determination that the defendant's actions were not a crime according to a techni-

cal legal definition or distinction determined to exist in the penal statute. The question to be decided is whether the officer's motives and actions at the time and under all the circumstances, including the nature of the officer's mistake, if any, were reasonable and not arbitrary or harassing.' " (citation omitted)); *Moore v. State*, 2005-CT-02063-SCT (¶21), 986 So. 2d 928, 935 (Miss. 2008) (en banc) ("In other words, based on the totality of the circumstances with which Officer Moulds was confronted, including a valid, reasonable belief that [the defendant] was violating a traffic law, Officer Moulds had sufficient probable cause to pull [the defendant] over, although, as it turns out, Officer Moulds based his belief of a traffic violation on a mistake of law.").

Two cases from the federal circuit courts of appeals illustrate the varying approaches. In *United States v. Martin*, 411 F.3d 998 (8th Cir. 2005), the United States Court of Appeals for the Eighth Circuit confronted a situation similar to the one presently at bar. In *Martin* an officer observed that a vehicle's right brake light failed properly to illuminate when the vehicle's brakes were engaged. *Id.* at 1000. Believing that he was witnessing a violation of a traffic law, the officer stopped the vehicle and subsequently arrested the driver for a different, more serious crime. *Id.* As it turns out, the applicable statute appeared to require only one properly functioning brake light. 411 F.3d at 1001. The court, however, reasoned that the "determinative question is not whether Martin actually violated the Motor Vehicle Code by operating a vehicle with one defective brake light, but whether an objectively reasonable police officer could have formed a reasonable suspicion that Martin was committing a code violation." *Id.* Then, pointing out that it was " 'common knowledge' " in the region that multiple brake lights are required, and that the language of the applicable statute was "counterintuitive and confusing," the court determined that the officer had an objectively reasonable basis to believe he had witnessed a traffic violation and that the stop was constitutionally permissible. 411 F.3d at 1001-02. On the other hand, in *United States v. Chanthasouxat*, 342 F.3d 1271 (11th Cir. 2003), the United States Court of Appeals for the Eleventh Circuit concluded that there was no reasonable suspicion to stop a vehicle for lacking an inside rearview mirror because the city ordinance the officer believed had been violated did not actually require such an inside mirror. *Id.* at 1278-80. The court found that the officer's mistaken belief regarding the statute's requirements was reasonable because (1) his training instructed that such a mirror was required;

(2) a magistrate had informed him that an inside mirror was necessary; and (3) he had "written more than 100 tickets for lack of an inside rear-view mirror." *Id.* at 1279. The court explained, however, that "a mistake of law, no matter how reasonable or understandable, . . . cannot provide reasonable suspicion . . . to justify a traffic stop." *Id.*

Each court offered persuasive justifications for its decision. The Eleventh Circuit explained that its rule is consistent with the principle that any ambiguity or vagueness in a statute should not be used against a defendant. *Chanthasouxat*, 342 F.3d at 1278-79. That reasoning is consistent with rationale from other courts, discussed approvingly by the Eleventh Circuit, indicating that to be permissible under the Fourth Amendment a stop must be objectively grounded in the actual, governing law. *Id.* at 1277-78 (citing *United States v. Lopez-Soto*, 205 F.3d 1101 (9th Cir. 2000), and *United States v. Lopez-Valdez*, 178 F.3d 282 (5th Cir. 1999)). The Eighth Circuit, on the other hand, reasoned that its view is in keeping with the foundational principle that an officer's actions must be "objectively reasonable in the circumstances." *Martin*, 411 F.3d at 1001 (citation and quotation marks omitted). Moreover, the court observed that courts " 'should not expect state highway patrolmen to interpret the traffic laws with the subtlety and expertise of a criminal defense attorney,' " *id.* (quoting *Sanders*, 196 F.3d at 913), or "a federal judge," *id.* That observation is perhaps somewhat supported by an earlier decision of the Supreme Court of the United States on a different, but related, issue. *See Michigan v. DeFillippo*, 443 U.S. 31, 37-40, 99 S. Ct. 2627, 2632-33, 61 L. Ed. 2d 343, 349-51 (1979) (holding that the arrest of an individual for violating a city ordinance later found to be unconstitutional nonetheless complied with the Fourth Amendment, in part because the Court reasoned that the "enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws" and based on that reasoning, believed that "[a] prudent officer . . . should not have been required to anticipate that a court would later hold the ordinance unconstitutional").

We find the Eighth Circuit's reasoning to be more compelling. To begin, that rationale seems to us, as it did to the Eighth Circuit, to be consistent with the primary command of the Fourth Amendment—that law enforcement agents act reasonably. *See Delaware v. Prouse*, 440 U.S. 648, 653-54, 99 S. Ct. 1391, 1396, 59 L. Ed. 2d 660, 667 (1979) (noting that the purpose of the Fourth Amendment "is to impose a

standard of reasonableness upon the exercise of discretion by government officials, including law enforcement agents, in order to safeguard the privacy and security of individuals against arbitrary invasions" (footnote call number, citations, and internal quotation marks omitted)). An officer may make a mistake, including a mistake of law, yet still act reasonably under the circumstances. As stated above, when an officer acts reasonably under the circumstances, he is not violating the Fourth Amendment. So long as the officer's mistake of law is objectively reasonable, then, the Fourth Amendment would seem not to be violated. Accordingly, requiring an officer to be more than reasonable, mandating that he be perfect, would impose a greater burden than that required under the Fourth Amendment.

Moreover, the reasonable suspicion standard does not require an officer actually to witness a violation of the law before making a stop. *See, e.g., Terry v. Ohio*, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880-81, 20 L. Ed. 2d 889, 907 (1968) (holding that an officer can constitutionally make a stop after witnessing "a series of acts, each of them perhaps innocent in itself, but which taken together warrant[ ] further investigation"). That rule generally applies regardless of the particular substantive law at issue, *Styles*, 362 N.C. at 414-16, 665 S.E.2d at 439-41, and results in part because *Terry* stops are conducted not only to investigate past crime but also to halt potentially ongoing crime, to thwart contemplated future crime, and, most importantly in these circumstances, to protect the public from potentially dangerous activity. *See* 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.1(e), at 281 (4th ed. 2004) (footnotes omitted).

Indeed, because we are particularly concerned for maintaining safe roadways, we do not want to discourage our police officers from conducting stops for perceived traffic violations. A routine traffic stop, based on what an officer reasonably perceives to be a violation, is not a substantial interference with the detained individual and is a minimal invasion of privacy. In fact, it seems to us that most motorists would actually prefer to learn that a safety device on their vehicle is not functioning properly. And particularly when judged against society's countervailing interest in keeping its roads safe, we think it prudent to endorse the reasonable interpretation of our traffic safety laws. It would, at a minimum, work at cross-purposes if we were to require our law enforcement officers to narrowly interpret our traffic safety statutes when deciding whether to conduct a stop for fear that a possible subsequent prosecution for the violation could be imperiled. That approach would undermine our officers'

important efforts in keeping our roads safe. And because we do not perceive such a Fourth Amendment requirement, we decline to create one.

For that reason we find the Eleventh Circuit's justifications inapposite. Police officers should be entitled to interpret our motor vehicle laws reasonably when conducting routine traffic stops. Of course, we are mindful that statutes may not be unconstitutionally vague and agree that it may be unreasonable to conduct a stop if the substantive statute is too vague. *Cf. DeFillippo*, 443 U.S. at 38, 99 S. Ct. at 2632, 61 L. Ed. 2d at 350 ("The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws."). But concerns about the rules of construction regarding the substantive statutes at issue seem to us to be more applicable to the subsequent judicial interpretation of a statute and not to a routine traffic stop that needs to be based only on reasonable suspicion. A *post hoc* judicial interpretation of a substantive traffic law does not determine the reasonableness of a previous traffic stop within the meaning of the state and federal constitutions. Such a *post hoc* determination resolves whether the conduct that previously occurred is actually within the contours of the substantive statute. But that determination does not resolve whether the totality of the circumstances present at the time the conduct transpired supports a reasonable, articulable suspicion that the statute was being violated. It is the latter inquiry that is the focus of a constitutionality determination, not the former. Respectfully disagreeing with the Eleventh Circuit, we think the Fourth Amendment's reasonable suspicion standard is not offended by an officer's objectively reasonable mistake of law.

Furthermore, we note that a decision to the contrary would be inconsistent with the rationale underlying the reasonable suspicion doctrine. "[R]easonable suspicion" is a "commonsense, nontechnical conception[ ] that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Ornelas v. United States*, 517 U.S. 690, 695, 116 S. Ct. 1657, 1661, 134 L. Ed. 2d 911, 918 (1996) (citations and internal quotation marks omitted). And while "reasonable suspicion" is more than "an inchoate and unparticularized suspicion or hunch of criminal activity," *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S. Ct. 673, 676, 145 L. Ed. 2d 570, 576 (2000) (citation and internal quotation marks omitted), " 'some minimal level of objective justification' " is all that

is demanded, *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1, 10 (1989) (quoting *INS v. Delgado*, 466 U.S. 210, 217, 104 S. Ct. 1758, 1763, 80 L. Ed. 2d 247, 255 (1984)). To require our law enforcement officers to accurately forecast how a reviewing court will interpret the substantive law at issue would transform this "commonsense, nontechnical conception" into something that requires much more than "some minimal level of objective justification." We would no longer merely require that our officers be reasonable, we would mandate that they be omniscient. This seems to us to be both unwise and unwarranted.

Our approach also preserves the historical nature of the inquiry into whether an officer's conduct satisfies the Fourth Amendment. The question of whether reasonable suspicion exists has historically been answered by considering the totality of the circumstances present in each individual case rather than on the basis of bright-line rules. As the Supreme Court of the United States has observed, "The concept of reasonable suspicion, like probable cause, is not 'readily, or even usefully, reduced to a neat set of legal rules.' " *Sokolow*, 490 U.S. at 7, 109 S. Ct. at 1585, 104 L. Ed. 2d at 10 (quoting *Illinois v. Gates*, 462 U.S. 213, 232, 103 S. Ct. 2317, 2329, 76 L. Ed. 2d 527, 544 (1983)). It follows then that if we were to treat an officer's reasonable mistake of law differently from other circumstances in the reasonable suspicion analysis, we would be declaring essentially that any legal mistake by police resulting in a traffic stop could violate our federal and state constitutions regardless of how objectively reasonable the police conduct. Such a rule would insert rigidity into a fluid concept, which we think inappropriate.

Endorsing disparate treatment of police mistakes of law would not only create a bright-line rule, but also alter the analysis courts employ to determine whether reasonable suspicion is present. The traditional constitutional inquiry is to determine whether a traffic stop is reasonable under all the circumstances. *United States v. Southerland*, 486 F.3d 1355, 1358 (D.C. Cir.) (citing *Whren*, 517 U.S. at 810, 116 S. Ct. at 1772-73, 135 L. Ed. 2d at 95-96), *cert. denied*, 552 U.S. 965, 128 S. Ct. 414, 169 L. Ed. 2d 290 (2007). If one circumstance, such as whether the officer made an objectively reasonable mistake of law, proved to be dispositive, then the reasonable suspicion analysis would change. A new threshold question would develop— whether the police had correctly forecast how the reviewing court would interpret the applicable law. If, and only if, this question were answered in the affirmative would the traditional totality of the cir-

cumstances analysis follow. This framework would seem to be a departure from the traditional reasonable suspicion analysis.

Finally, our approach allows reviewing courts to treat all police mistakes the same. The Supreme Court of the United States does not demand factual accuracy from our police when determining whether reasonable suspicion exists. *Illinois v. Rodriguez*, 497 U.S. 177, 185-86, 110 S. Ct. 2793, 2800, 111 L. Ed. 2d 148, 159 (1990) ("[I]n order to satisfy the 'reasonableness' requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government . . . is not that they always be correct, but that they always be reasonable."). Neither do the federal circuit courts of appeals. *See, e.g., Chanthasouxat*, 342 F.3d at 1276 (collecting cases and observing that a "traffic stop based on an officer's incorrect but reasonable assessment of facts does not violate the Fourth Amendment"). Instead, reasonableness is all that is required. *E.g., id.* at 1276-77. Of course, the federal circuits are divided on whether officers are permitted to make reasonable mistakes of law. We, however, find no constitutional requirement to distinguish between mistakes of fact and mistakes of law in this context. And, in part also because it is not always clear whether a mistake is one of fact or of law, *e.g., United States v. Miguel*, 368 F.3d 1150, 1153-54 (9th Cir. 2004), we decline to create such a distinction in this state. We believe the correct rule is that so long as an officer's mistake is reasonable, it may give rise to reasonable suspicion.

Applying this rule to the facts of this case, we observe that the following objective circumstances were present at the time of the stop. Our General Statutes mandated that each "motor vehicle . . . have all originally equipped rear lamps or the equivalent in good working order." N.C.G.S. § 20-129(d). Our legislature permitted a vehicle's brake lighting system to be "incorporated into a unit with one or more other rear lamps." *Id.* § 20-129(g). It is reasonable to read these two provisions of section 20-129 to say that, because it may be "incorporated into a unit with . . . other rear lamps," *id.*, a brake light is a rear lamp which, like all "originally equipped rear lamps," must be kept "in good working order," N.C.G.S. § 20-129(d). Such a reading is particularly reasonable in light of both the federal requirement that a passenger vehicle maintain two red brake lights on the rear of the vehicle "at the same height, symmetrically about the vertical center-line, as far apart as practicable," 49 C.F.R. § 571.108, at S7.3.1 & Table I-a (2011), and the reference in N.C.G.S. § 20-129.1 to the required color of the lenses of multiple "brake *lights*," N.C.G.S. § 20-129.1(9)

(emphasis added). When the stop at issue in this case occurred, neither this Court nor the Court of Appeals had ever interpreted our motor vehicle laws to require only one properly functioning brake light. Given these circumstances, Sergeant Darisse could have reasonably believed that he witnessed a violation of our motor vehicle laws when he observed that the Escort had an improperly functioning brake light.

After considering the totality of the circumstances, we conclude that there was reasonable, articulable suspicion to conduct the traffic stop of the Escort in this case. We are not persuaded that, because Sergeant Darisse was mistaken about the requirements of our motor vehicle laws, the traffic stop was necessarily unconstitutional. After all, reasonable suspicion is a "commonsense, nontechnical conception[ ] . . . on which reasonable and prudent men, not legal technicians, act," *Ornelas*, 517 U.S. at 695, 116 S. Ct. at 1661, 134 L. Ed. 2d at 918 (citations and internal quotation marks omitted), and the Court of Appeals analyzed our General Statutes at length before reaching its conclusion that the officer's interpretation of the relevant motor vehicle laws was erroneous. After considering the totality of the circumstances, we hold that Sergeant Darisse's mistake of law was objectively reasonable and that he had reasonable suspicion to stop the vehicle in which defendant was a passenger. Accordingly, we reverse the decision of the Court of Appeals and remand this case to that court for additional proceedings.

REVERSED AND REMANDED.

Justice HUDSON dissenting.

Because the majority's opinion here significantly, and in my view unnecessarily, alters our Fourth Amendment jurisprudence by introducing subjectivity and vagueness into our Fourth Amendment analysis and effectively overruling this Court's prior precedent, I respectfully dissent.

As a starting point, there is no doubt in my mind that, when he stopped defendant's vehicle, Sergeant Darisse acted upon a reasonable belief that defendant violated the law by operating a vehicle with one malfunctioning brake light. It is my guess that, before the COA's surprising decision below, most citizens of this state believed that a malfunctioning brake light represented legal grounds for a traffic stop and a citation. This belief was the only reason given for the stop;

there was otherwise nothing to indicate that the vehicle, which was not being driven by defendant, was being operated improperly. The trial court's findings on denying defendant's motion to suppress remain unchallenged and are therefore binding on appeal. They include the finding that Sergeant Darisse activated his blue light upon observing "the right brake light of the vehicle not to function." The trial court then concluded that the officer had reasonable articulable suspicion that the vehicle and driver were violating laws by having a brake light that was not functioning properly. The Court of Appeals held that there was no violation of any of the applicable statutes, N.C.G.S. §§ 20-129(d), 20-129(g), and 20-183.3, and therefore no legal or constitutional basis for the stop.

In the Court of Appeals the State argued that the trooper "actually observed a violation of N.C.[G.S.] § 20-129(d)" and that "[d]efendant's reliance on 'mistaken belief' cases . . . is therefore misplaced." Defendant argued, and the Court agreed, that there was no violation of the statutes. It was neither argued nor held that the trooper had a "reasonable if mistaken belief," just whether there was or was not a violation of the statutes.

Instead of bringing to this Court the issue of statutory interpretation, the State presented its single issue to be reviewed as: "Did the Court of Appeals err in holding that a stop based on a mistaken belief is not objectively reasonable and cannot support reasonable suspicion to stop the vehicle?" This Court allowed review of an issue not decided by the Court of Appeals and has now opened a Pandora's box by approving of the use of evidence obtained solely because of a traffic stop based upon an officer's mistake of law. I must respectfully dissent.

There are many problems with the majority's decision—it introduces subjectivity into what was previously a well-settled objective inquiry and creates an interpretive role regarding state statutes for police officers and police departments. The danger in adopting a new constitutional rule here is that this particular case seems so innocuous: *Of course* it is reasonable that an officer would pull over a vehicle for a malfunctioning brake light. But this new constitutional rule will also apply in the next case, when the officer acts based on a misreading of a less innocuous statute, or an incorrect memo or training program from the police department, or his or her previous law enforcement experience in a different state, or his or her belief in a nonexistent law.

**STATE v. HEIEN**

[366 N.C. 20 (2012)]

There is ample precedent for the decision the majority could have made here, both in this state and in federal courts. This Court has repeatedly and recently stated that what an officer believes is irrelevant to Fourth Amendment analysis—only the objective facts and the actual law matter. In *State v. Barnard* we stated that it was "irrelevant" that the officer stopped the car for a perceived, but actually nonexistent, statutory violation, saying that "[t]he constitutionality of a traffic stop depends on the objective facts, not the officer's subjective motivation." 362 N.C. 244, 248, 658 S.E.2d 643, 645-46, *cert. denied*, 555 U.S. 914, 129 S. Ct. 264 (2008). In *State v. Ivey* we invalidated a stop when the objective facts showed that there was no actual statutory violation. 360 N.C. 562, 565, 633 S.E.2d 459, 461-62 (2006), *abrogated on other grounds*, *State v. Styles*, 362 N.C. 412, 415 n.1, 665 S.E.2d 438, 440 n.1 (2008). The majority implicitly' overrules both of these cases today.

While the majority quotes the United States Supreme Court's decision in *Ornelas v. United States* as if that decision supports its position, the Court in *Ornelas* actually said the precise opposite a few sentences after the quote in the majority opinion: When evaluating a stop based on reasonable suspicion, "the issue is whether the facts satisfy the . . . statutory . . . standard, or to put it another way, whether the rule of law as applied to the established facts *is or is not violated*." 517 U.S. 690, 696-97, 116 S. Ct. 1657, 1662 (1996) (emphasis added) (citation and quotation marks omitted). There is no room for reasonable mistakes of law under the *Ornelas* articulation of the rule; either the law was violated and the stop is reasonable, or the law was not violated and the stop is not reasonable. Under our law and the law according to the United States Supreme Court, it does not matter what the officer subjectively thinks the law is. What matters is whether the objective facts show an actual violation of the law.

Further, the majority supports its reasoning with case law from the Court of Appeals for the Eighth Circuit, *see United States v. Martin*, 411 F.3d 998, 1001 (8th Cir. 2005), and contrasts that decision with the reasoning in the Eleventh Circuit's decision in *United States v. Chanthasouxat*, 342 F.3d 1271, 1278-79 (11th Cir. 2003). Though the majority does not acknowledge so, it should be emphasized that the Eighth Circuit stands alone among the federal circuits on this issue. The First, Third, Fifth, Seventh, Ninth, Tenth, Eleventh, and D.C. Circuits all apply some form of the rule that an officer's mistake of law cannot be the basis for reasonable suspicion, though many allow that a stop based on a mistake of law may be constitutional if it can

be justified objectively notwithstanding the mistake of law. *See United States v. Coplin*, 463 F.3d 96, 101 (1st Cir. 2006), cert. denied, 549 U.S. 1237, 127 S. Ct. 1320 (2007); *United States v. Mosley*, 454 F.3d 249, 260 n.16 (3d Cir. 2006); *United States v. Miller*, 146 F.3d 274, 279 (5th Cir. 1998); *United States v. McDonald*, 453 F.3d 958, 961 (7th Cir. 2006); *United States v. Lopez-Soto*, 205 F.3d 1101, 1106 (9th Cir. 2000); *United States v. Tibbetts*, 396 F.3d 1132, 1138 (10th Cir. 2005); *Chanthasouxat*, 342 F.3d at 1279; *cf. United States v. Debruhl*, 38 A.3d 293, 299 (D.C. Cir. 2012) (noting that court's refusal to "lead this jurisdiction toward acceptance of the discredited 'mistake of law' justification for Fourth Amendment violations").[1] The Second, Fourth, and Sixth Circuits appear not to have decided the issue explicitly yet, though district courts in the Second Circuit apply the majority rule. *See United States v. Williams*, No. 11 Cr. 228, 2011 WL 5843475, at *5 (S.D.N.Y. Nov. 21, 2011) (stating that "[a] mistake of law cannot provide objectively reasonable grounds for suspicion"); *see also United States v. McHugh*, 349 F. App'x 824, 828 n.3 (4th Cir. 2009) (per curiam) ("[W]e assume, without deciding, that an officer's reasonable mistake of law may not provide the objective grounds for reasonable suspicion to justify a traffic stop."); *United States v. Jones*, 479 F. App'x 705, 712 (6th Cir. 2012) ("This court has not yet answered whether an officer's objectively reasonable mistake of law can establish reasonable suspicion for a search or seizure."). While using an imprecise tool like circuit-counting to justify a position should be done with care, the overwhelming acceptance of the position directly opposite that taken by the majority today should give us all pause.

Most troubling is that this decision imports into our jurisprudence a concept we have expressly rejected. Allowing an officer's "reasonable mistake of law" to support a warrantless stop is the functional equivalent of a "good faith exception" for stops conducted in contravention of the law—as long as the officer acted in good faith, that is, he is reasonably unaware that his actions are inconsistent with the law, the illegality of the stop will not require suppression of

---

1. Of note, a middle-of-the-road approach would alleviate the majority's concerns about a per se rule while preserving traditional Fourth Amendment protections. We could easily adopt a principle like that expressed in *United States v. Booker*: "Stops premised on a mistake of law, even a reasonable, good-faith mistake, are generally held to be unconstitutional. A stop is lawful despite a mistake of law, however, if an objectively valid basis for the stop nonetheless exists." 496 F.3d 717, 722 (D.C. Cir. 2007), *vacated on other grounds*, 556 U.S. 1218, 129 S. Ct. 2155 (2009) (citation and quotation marks omitted). In fact, this Court applied this exact reasoning, if less explicitly, in *State v. Barnard. See* 362 N.C. at 248, 658 S.E.2d at 645-46.

**STATE v. HEIEN**

[366 N.C. 20 (2012)]

the obtained evidence. In *State v. Carter*, 322 N.C. 709, 720-24, 370 S.E.2d 553, 560-62 (1988), this Court discussed at length the value of the exclusionary rule and the reason for this Court's rejection of a good faith exception to that rule.[2] One of those reasons is that "the exclusionary rule is responsible for the systematic, in-depth training of police forces in the law of search and seizure. It can be no part of our constitutional duties to signal a retreat from these salutary advances in constitutional compliance which have guided police practice in this state since 1937." 322 N.C. at 721, 370 S.E.2d at 560 (footnote call number omitted). Yet such a retreat is exactly what the Court embraces today.[3]

The majority's concern that we would be asking omniscience of our police if we invalidated this stop is overblown. We would merely be asking that our police be diligent in studying the law and remaining current on changes to the law, as I am certain they already are. While the majority claims that "we do not want to discourage our police officers from conducting stops for perceived traffic violations," it is entirely unclear to me how a rule invalidating stops not based on the law would chill traffic stops generally, and the majority does not elaborate other than to mention the "fear that a subsequent prosecution for the violation would be imperiled." Other decisions by this Court that have upheld traffic stops based on observations amounting to "reasonable suspicion" illustrate how little it takes to satisfy this standard. *See, e.g., State v. Otto*, 366 N.C. 134, 726 S.E.2d 824, 828 (2012). Because officers (rightfully) face no punishment for a stop based on a mistake of law, and because there would be no prosecution at all absent the stop, this alleged "fear" is not very compelling. Our police forces consist of trained professionals who carefully apply the law as laid down by the General Assembly and who are fully capable of adapting to changes in the law.

By adopting the majority's rule, we are not only potentially excusing mistakes of law in the exceedingly rare case when the Court of

---

2. In 2011 the General Assembly created a statutory "good faith exception" in N.C.G.S. § 15A-974 and explicitly requested that this Court revisit *Carter*. Act of Mar. 8 2011, ch. 6, 2011 N.C. Sess. Laws 10. This statute was enacted after this defendant's charges were filed; however, even in the statute, the exception requires that the good faith belief be "objectively reasonable." N.C.G.S. § 15A-974(a)(2) (2011).

3. The same concern prompted the Ninth Circuit to reject exactly this argument in *United States v. Lopez-Soto*: "To create an exception here would defeat the purpose of the exclusionary rule, for it would remove the incentive for police to make certain that they properly understand the law that they are entrusted to enforce and obey." 205 F.3d at 1106.

Appeals divines a novel interpretation of a statute, but also those mistakes of law that arise from simple misreadings of statutes, improper trainings, or ignorance of recent legislative changes. There is simply no reason to go to such lengths here, especially when the General Assembly has recently spoken to clarify this issue, which will undoubtedly come before us in due course. This decision is not merely unnecessary here; it is premature in light of the recent amendment to N.C.G.S. § 15A-974.

The flaws in the majority's opinion are perhaps most apparent in its single statement that "[p]olice officers should be entitled to interpret our motor vehicle laws reasonably when conducting routine traffic stops." Separation of powers doctrine dictates otherwise: It is the legislature's job to write the law and the judiciary's job to interpret the law. The job of the police is to *enforce* the law as it has been written by the legislature and interpreted by the courts. Proper enforcement of the law requires accurate knowledge of the law; as the Eleventh Circuit cogently noted in *United States v. Chanthasouxat,* to decide otherwise is to endorse "the fundamental unfairness of holding citizens to the traditional rule that ignorance of the law is no excuse while allowing those entrusted to enforce the law to be ignorant of it." 342 F.3d at 1280 (internal citation and quotation marks omitted).

Had the State petitioned for review on the issues of statutory interpretation addressed by the Court of Appeals, we could have based our decision on such an interpretation. In my view, that would have been the more appropriate course, and one by which we could stand firm on the protections of the Fourth Amendment. Then the General Assembly, should it so desire, could rewrite the brake light statute to clearly require that all brake lights operate properly, which it could do with alacrity. Then our police officers could continue the long-standing practice of stopping cars with malfunctioning brake lights; stops like this one would be constitutional; and we would have avoided eviscerating the "objectively reasonable" standard of the Fourth Amendment, and of our own amended N.C.G.S. § 15A-974. Because the majority has taken this unnecessary route, I respectfully dissent.

CHIEF JUSTICE PARKER and JUSTICE TIMMONS-GOODSON join in this dissenting opinion.