**STATE v. COLEMAN**

[228 N.C. App. 76 (2013)]

STATE OF NORTH CAROLINA
v.
RUDOLPH ALEXANDER COLEMAN

No. COA12-1173

Filed 18 June 2013

**Search and Seizure—traffic stop—tip—cup of beer in parking lot**

The trial court erred in an impaired driving prosecution by denying defendant's motion to suppress evidence obtained in a traffic stop where the stop was based on a tip that there was a cup of beer in a vehicle parked at a gas station. A tip must be reliable in its assertion of illegality and, while possession of an open container of alcohol in a public vehicular area was once prohibited, N.C.G.S. § 20-138.7(a) was changed in 2000 to apply the prohibition only to highways or rights-of-way. Any mistake by the officer in his understanding of the law was not reasonable; moreover, the tip lacked sufficient indicia of reliability to provide a reasonable suspicion to stop defendant.

Appeal by defendant from order entered 7 March 2012 by Judge Paul Gessner in Wake County Superior Court. Heard in the Court of Appeals 25 March 2013.

*Attorney General Roy Cooper, by Associate Attorney General Gayle L. Kemp, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Hannah Hall, for defendant.*

HUNTER, Robert C., Judge.

Defendant Rudolph Alexander Coleman appeals from the judgment entered against him after he pled guilty to driving while impaired. On appeal, defendant argues that the trial court erred in denying his motion to suppress. After careful review, we reverse the trial court's order denying his motion to suppress and remand for trial.

Background

The State's evidence tended to show the following facts: On 2 April 2010, Officer B.W. Lampe ("Officer Lampe") with the Raleigh Police Department received a "be on the lookout" call ("BOLO call") from his

communications center. The communications center had issued the BOLO call after receiving a tip from an anonymous citizen. The caller reported that there was a cup of beer in a gold Toyota sedan parked at the Kangaroo gas station at the corner of Wake Forest Road and Ronald Drive. The caller stated the license plate number of the car was VST-8773. Although the complainant wished to remain anonymous, the communications center obtained the caller's name, Kim Creech ("Ms. Creech"), and phone number. It is unclear from the record whether the caller willingly provided that information or if the communications center was able to obtain that information independently. Officer Lampe testified that he did not know Ms. Creech nor had he worked with her in the past. Ms. Creech did not provide any identifying information about the driver of the vehicle.

After receiving the BOLO call, Officer Lampe responded to the gas station parking lot and observed a vehicle, later identified as defendant's vehicle, that he believed fit the description of the car in Ms. Creech's tip. In his citation, Officer Lampe noted that defendant's car was a Nissan, not a Toyota, but that its license plate matched that provided by Ms. Creech. As defendant began pulling out of the parking lot, Officer Lampe got behind him and followed him onto Wake Forest Road. Then, Officer Lampe initiated his emergency lights and pulled defendant over; defendant pulled into a TGI Friday's parking lot. Prior to pulling defendant over, Officer Lampe did not observe defendant commit any traffic violations. Officer Lampe administered a chemical analysis test to defendant, and defendant was subsequently charged with and arrested for DWI.

After defendant pled guilty in district court and appealed his conviction, defendant filed a motion in Wake County Superior Court to suppress all evidence obtained as a result of his stop. The matter came on for hearing on 2 February 2012. The trial court denied defendant's motion to suppress. Specifically, it found that: (1) Kim Creech provided a "citizen tip" to the communications center; (2) Officer Lampe arrived at the gas station "shortly after" the BOLO was issued; (3) Officer Lampe observed the vehicle described in the BOLO call in the parking lot; and (4) Officer Lampe was able to verify that defendant's vehicle had the same license plate number as the number provided by Ms. Creech. Based on these findings, the trial court concluded that, based on the totality of the circumstances, Officer Lampe had reasonable and articulable suspicion to stop defendant.

After his motion to suppress was denied, defendant pled guilty to DWI but reserved his right to appeal the denial of his motion to suppress. The trial court sentenced him to 30 days imprisonment, but suspended

the sentence and placed him on unsupervised probation for 12 months. Defendant timely appealed.[1]

## Arguments

Defendant's sole argument on appeal is that the trial court erred in denying his motion to suppress. Specifically, defendant contends that Ms. Creech's tip lacked sufficient indicia of reliability, and Officer Lampe did not have reasonable suspicion to stop him. Because we find that the tip did not contain any reliable assertion of illegality given that Officer Lampe's mistaken belief that possessing an open container of alcohol in a parking lot was not reasonable, pursuant to *State v. Heien*, __ N.C. __, 737 S.E.2d 351 (2012), we agree.

Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "The trial court's conclusions of law . . . are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

An officer must have a reasonable suspicion of criminal activity before conducting an investigatory stop of a vehicle. *State v. McArn*, 159 N.C. App. 209, 212, 582 S.E.2d 371, 374 (2003). A tip from a confidential and reliable informant or a tip from an anonymous informant may provide an officer reasonable suspicion to initiate a *Terry* stop. *Id.* at 213, 582 S.E.2d at 374. However, the Supreme Court has noted that a "tip [must] be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Florida v. J.L.*, 529 U.S. 266, 272, 146 L. Ed. 2d 254, 261 (2000); *see also Hughes*, 353 N.C. at 209, 539 S.E.2d at 632 (noting that "reasonable suspicion does not arise merely from the fact that the individual met the description given to the

---

1. We note that defendant filed a petition for writ of *certiorari* should this Court determine that his notice of appeal was not proper pursuant to *State v. Miller*, 205 N.C. App. 724, 696 S.E.2d 542 (2010). In *Miller*, 205 N.C. App. at 725-26, 696 S.E.2d at 543, this Court concluded that it did not have jurisdiction to consider the defendant's appeal pursuant to N.C. Gen. Stat. § 15A-979(b) because the defendant only appealed the denial of his motion to suppress, not his final judgment of conviction. However, based on the transcript of the sentencing hearing, it appears that defendant appealed both the denial of his motion to suppress and his final conviction after he pled guilty. Moreover, the Appellate Entry, filed 14 May 2012, indicates that defendant gave proper notice of appeal. Thus, defendant's notice of appeal was properly given. Accordingly, we dismiss defendant's petition for writ of *certiorari* as it is not necessary for us to consider defendant's appeal.

officers" in a tip but the tip must also show the tipster has knowledge of concealed criminal activity).

We note that, in this case, Officer Lampe's sole reason for stopping defendant was the information contained in Ms. Creech's tip. He testified that he did not observe defendant commit any traffic violations or see any evidence of improper driving that would suggest impairment prior to initiating the stop. Thus, in determining whether Ms. Creech's tip was reliable in its assertion of illegality, we must first determine whether defendant's alleged behavior, i.e., possessing an open container of alcohol in the Kangaroo gas station parking lot, was illegal. While it is illegal to possess an open container of alcohol in the passenger area of a vehicle while the motor vehicle is on the highway or the highway right-of-way, *see* N.C. Gen. Stat. § 20-138.7 (a1) (2011), possessing an open container of alcohol in a gas station parking lot is not illegal. Pursuant to N.C. Gen. Stat. § 20-4.01(32)(a)(2) (2011), the parking lot of a service station constitutes a "public vehicular area" ("PVA"), not a highway or highway right-of-way, and there is no statute prohibiting a person from possessing an open container of alcohol in a PVA. While N.C. Gen. Stat. § 20-138.7(a) formerly prohibited a person from driving with an open container of alcohol in a PVA, the statute was changed in 2000 so that an individual was prohibited from driving with an open container of alcohol only on highways or highway right-of-ways. *See* 2000 N.C. Sess. Laws ch. 155, § 4 (2000). Accordingly, Ms. Creech's tip contained no actual allegation of criminal activity.

That being said, what complicates our decision is that, presumably, in responding to the BOLO call, Officer Lampe believed that it was illegal to possess an open container of alcohol in a gas station parking lot. In other words, it appears that Officer Lampe mistakenly believed that Ms. Creech's tip contained an allegation of criminal activity. Thus, our Supreme Court's recent decision in *Heien*, __ N.C. at __, 737 S.E.2d at 358, compels us to consider whether Officer Lampe's mistaken belief that the tip included an actual allegation of illegal activity was objectively reasonable. In *Heien*, our Supreme Court departed from this State's Fourth Amendment jurisprudence and concluded that "so long as an officer's mistake[n] [belief that a person has violated the law] is reasonable, it may give rise to reasonable suspicion." *Id.* Thus, if we conclude that Officer Lampe's mistaken belief of law was reasonable, Ms. Creech's tip would include an "assertion of illegality," *J.L.*, 529 U.S. at 272, 146 L. Ed. 2d at 261, necessary for an officer to have reasonable suspicion to conduct a *Terry* stop.

In addressing this issue, the *Heien* Court focused on the interpretation and analysis necessary to understand the general statutes at issue in that case—specifically, the brake light statutes. *Id.* at __, 737 S.E.2d at

353. This Court had concluded that a motor vehicle was only required to have one working brake light. *Id.* On review, our Supreme Court classified this Court's statutory analysis of the brake light statutes as "a novel issue of statutory interpretation[.]" *Heien*, __ N.C. at __, 737 S.E.2d at 353. Specifically, the Court stated that:

> Our General Statutes mandated that each "motor vehicle . . . have all originally equipped rear lamps or the equivalent in good working order." [N.C. Gen. Stat.] § 20–129(d). Our legislature permitted a vehicle's brake lighting system to be "incorporated into a unit with one or more other rear lamps." *Id.* § 20–129(g). It is reasonable to read these two provisions of section 20–129 to say that, because it may be "incorporated into a unit with . . . other rear lamps," *id.*, a brake light is a rear lamp which, like all "originally equipped rear lamps," must be kept "in good working order," [N.C. Gen. Stat.] § 20–129(d). Such a reading is particularly reasonable in light of both the federal requirement that a passenger vehicle maintain two red brake lights on the rear of the vehicle "at the same height, symmetrically about the vertical centerline, as far apart as practicable," 49 C.F.R. § 571.108, at S7.3.1 & Table I-a (2011), and the reference in [N.C. Gen. Stat.] § 20–129.1 to the required color of the lenses of multiple "brake *lights*," [N.C. Gen. Stat.] § 20–129.1(9) (emphasis added). When the stop at issue in this case occurred, neither this Court nor the Court of Appeals had ever interpreted our motor vehicle laws to require only one properly functioning brake light. Given these circumstances, Sergeant Darisse could have reasonably believed that he witnessed a violation of our motor vehicle laws when he observed that the [defendant's car] had an improperly functioning brake light.

*Id.* at __, 737 S.E.2d at 358-59. In sum, the *Heien* Court's finding that the officer's mistaken belief of law was reasonable was predicated on the complex and novel language of the brake light statutes. Similarly, in *U.S. v. Martin*, 411 F.3d 998, 1001 (2005), a case relied upon by our Supreme Court in adopting the new jurisprudence, the Eighth Circuit, in addressing the objective reasonableness of an officer's mistaken belief of law, focused on the "counterintuitive and confusing" language of the traffic laws at issue.

In contrast, the statute at issue here, our State's open container law, is neither novel nor complex. It clearly and unambiguously prohibits the

possession of an open container in a motor vehicle only on highways and highway right-of-ways. There is no confusing or counterintuitive language in N.C. Gen. Stat. § 20-138.7(a1). Furthermore, as discussed, while the statute formerly prohibited driving in a PVA with an open container of alcohol, it was changed over ten years earlier. Moreover, we note that, while the distinction between "highway" and "public vehicular area" may be unfamiliar to lay persons, their definitions are clearly stated in section 20-4.01 of our motor vehicle laws as:

(13) Highway. — The entire width between property or right-of-way lines of every way or place of whatever nature, when any part thereof is open to the use of the public as a matter of right for the purposes of vehicular traffic. The terms "highway" and "street" and their cognates are synonymous.

. . .

(32) Public Vehicular Area. — Any area within the State of North Carolina that meets one or more of the following requirements:

a. The area is used by the public for vehicular traffic at any time, including by way of illustration and not limitation any drive, driveway, road, roadway, street, alley, or parking lot upon the grounds and premises of any of the following:

. . .

2. Any service station, drive-in theater, supermarket, store, restaurant, or office building, or any other business, residential, or municipal establishment providing parking space whether the business or establishment is open or closed.

The term "PVA" frequently appears in our motor vehicle laws, over two dozen times. Law enforcement officers would not only be familiar with these terms but would also be aware of the distinction between a PVA and a highway. Finally, unlike *Heien* where the state of the law regarding brake lights was unclear at the time the officer made the stop, here, the open container law, N.C. Gen. Stat. § 20-138.7, had been well-settled for over ten years. Based on these circumstances, Officer Lampe's mistaken understanding of the open container law is simply not reasonable, and his mistaken belief that defendant was violating the open container law, which served as the basis for his stop, was unreasonable. Accordingly,

we reverse the trial court's denial of defendant's motion to suppress and grant him a new trial.

We note that even if we had concluded that Officer Lampe's mistaken belief of law was reasonable pursuant to *Heien*, we also find that Ms. Creech's tip lacked sufficient indicia of reliability to provide Officer Lampe reasonable suspicion to stop defendant. In concluding that the tip was not sufficiently reliable to establish reasonable suspicion, this Court, in *McArn*, 159 N.C. App. at 214, 582 S.E.2d at 375, stated that:

> [T]he fact that the anonymous tipster provided the location and description of the vehicle may have offered some limited indicia of reliability in that it assisted the police in identifying the vehicle the tipster referenced. It has not gone unnoticed by this Court, however, that the tipster never identified or in any way described an individual. Therefore, the tip upon which Officer Hall relied did not possess the indicia of reliability necessary to provide reasonable suspicion to make an investigatory stop. The anonymous tipster in no way predicted defendant's actions. The police were thus unable to test the tipster's knowledge or credibility. Moreover, the tipster failed to explain on what basis he knew about the white Nissan vehicle and related drug activity

Similarly, in *State v. Peele*, 196 N.C. App. 668, 673, 675 S.E.2d 682, 686, *disc. review denied*, 363 N.C. 587, 683 S.E.2d 383 (2009), we determined that an anonymous tip was insufficient to provide reasonable suspicion when the anonymous caller provided no way for the officer to test the tipster's credibility and included no prediction of the defendant's future actions.

We can discern no meaningful distinction between Ms. Creech's tip and those in *McArn* and *Peele*. While the fact that Ms. Creech's tip provided the license plate number and location of defendant's car may have provided some limited indicia of reliability, she did not identify or describe defendant, did not provide any way for Officer Lampe to assess her credibility, failed to explain her basis of knowledge, and did not include any information concerning defendant's future actions. Accordingly, even if we had concluded that Officer Lampe's mistaken belief of law was reasonable, we would have reversed the trial court's order and remanded for a new trial because Ms. Creech's anonymous tip lacked the sufficient indicia of reliability necessary to establish reasonable suspicion.

Conclusion

Based on the foregoing reasons, we reverse the trial court's order denying defendant's motion to suppress and remand for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

Chief Judge MARTIN and Judge STEPHENS concur.