**Adam STARR, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A04–0912–CR–677.**

Court of Appeals of Indiana.

June 22, 2010.

Timothy J. Burns, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Adam Starr ("Starr") appeals his conviction of Refusal to Identify Self, a Class C misdemeanor,[1] presenting the sole issue of whether a vehicular passenger is subject to the same criminal penalties by refusing to identify himself when, unlike the driver of the vehicle, there was no reasonable suspicion that he had committed an infraction or violated an ordinance. We reverse.

### Facts and Procedural History

On September 1, 2009, Starr was a passenger in a vehicle driven by his girlfriend, I.B., when the vehicle was stopped for an illegal turn. Indianapolis Metropolitan Police Officers Charles Tice and David Ellis ascertained I.B.'s identity and also questioned Starr as to his identity. Starr denied that he had any identification on him, claimed to be "Mr. Horrell," and indicated that he could not remember his social security number. (Tr. 20.) Confronted with photographic identification found in the vehicle, Starr claimed that it depicted his "identical cousin." (Tr. 23.)

The officers determined that a protective order prohibited contact between Starr and I.B. Starr was arrested and charged with Invasion of Privacy and Refusal to Identify Self. A bench trial was conducted on October 15, 2009. Starr was acquitted of Invasion of Privacy and convicted of Refusal to Identify Self. He was sentenced to eight days in the Marion County Jail. Starr now appeals, arguing that the statute criminalizing the refusal to identify oneself is directed toward the driver of a vehicle stopped for a traffic offense and not a passenger.

### Discussion and Decision

#### Standard of Review

The interpretation of a statute is a question of law which we review de novo. *Nash v. State,* 881 N.E.2d 1060, 1063 (Ind.Ct.App.2008), *trans. denied.* If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. *Id.* If, however, the language is susceptible to more than one reasonable construction, we must construe the statute in accordance with apparent legislative intent. *Id.*

Penal statutes are to be strictly construed against the State and should be held to prohibit only that conduct which is clearly within the spirit and letter of the statutory language. *Marshall v. State,* 602 N.E.2d 144, 147 (Ind.Ct.App.1992), *trans. denied.* However, criminal statutes are not to be narrowed to the point that they exclude cases which the language fairly covers. *Barger v. State,* 587 N.E.2d 1304, 1306 (Ind.1992). Penal statutes should be interpreted in order to give efficient operation to the expressed intent of the legislature. *Id.* The best evidence of legislative intent is the language of the statute, giving all words their plain and ordinary meaning unless otherwise indicated by the statute. *Chambliss v. State,* 746 N.E.2d 73, 77 (Ind.2001). Statutes relating to the same general subject matter are *in pari materia* and should be construed together so as to produce a harmonious statutory scheme. *Sanders v. State,* 466 N.E.2d 424, 428 (Ind.1984).

---

1. Ind.Code § 34–28–5–3.5.

## Analysis

The Good Faith Belief Act, Indiana Code Section 34–28–5–3, provides:

Whenever a law enforcement officer believes in good faith that a person has committed an infraction or ordinance violation, the law enforcement officer may detain that person for a time sufficient to:

(1) inform the person of the allegation;

(2) obtain the person's:

(A) name, address, and date of birth; or

(B) driver's license, if in the person's possession; and

(3) allow the person to execute a notice to appear.

The next successive statutory provision, Indiana Code Section 34–28–5–3.5, under which Starr was convicted, provides:

A person who knowingly or intentionally refuses to provide either the person's:

(1) name, address, and date of birth; or

(2) driver's license, if in the person's possession;

to a law enforcement officer who has stopped the person for an infraction or ordinance violation commits a Class C misdemeanor.

Starr argues that the Refusal to Identify Self statute may not logically be applied to one who has committed no infraction or violation. In seeking reversal of his conviction, he emphasizes the fact that he was merely a passenger; thus, he lacked personal culpability for a violation related to the operation of the vehicle.

The State responds that Starr was lawfully "stopped" when the vehicle was stopped, and argues that the legislative intent behind the Refusal to Identify Self statute is to encourage full compliance with an officer who has conducted a vehicular stop for an infraction or ordinance violation and has requested information so that the officer can assess the situation and perform his or her duties. We agree with the State that a vehicular stop frequently involves persons other than the driver, and we observe that the Legislature chose to describe the individual subject to the criminal statute by using the term "person" as opposed to "driver." Thus, it would appear that passengers are not categorically excluded.

■ The State correctly observes that Starr was "stopped" when his girlfriend's vehicle was stopped for an illegal turn. *See Tawdul v. State*, 720 N.E.2d 1211, 1217 (Ind.Ct.App.1999) (holding that once a police officer effects a lawful traffic stop, the passenger of the vehicle is also validly stopped), *trans. denied.* Even where a driver is "independently culpable" for a traffic violation, "the police have a limited right to briefly detain a passenger who exits the vehicle after it has been lawfully stopped." *Id.* at 1216–17. The passenger may be detained so that the police may "ascertain the situation" and "alleviate any concerns the officer has for his or her safety." *Id.* at 1217. If probable cause or reasonable suspicion develops during the short detention, the officer may be justified in detaining the individual longer. *Id.* In *Tawdul,* the passenger who had exited the vehicle and refused to comply with an officer's directive to return to it was properly arrested for resisting law enforcement. *Id.*

■ Here, however, the alleged criminal conduct with which we are concerned is not forcible resistance but passive refusal to provide verbal or documentary identification during a traffic stop. Certainly, a police officer is free to request identification without implicating the Fourth Amendment. *Hiibel v. Sixth Judicial Dist. Ct. of Nev.,* 542 U.S. 177, 185, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004). As such, we do not suggest that an officer

is constrained to request only the driver's identification during a traffic stop. In the vast majority of cases, a person will choose to comply when identification is requested. Nonetheless, as a general proposition, "[c]itizens are not required to interact with police officers." *Greeno v. State*, 861 N.E.2d 1232, 1237 (Ind.Ct.App.2007) (citing *Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)).

■■■■ In the context of a traffic stop for a vehicular violation, the Good Faith Belief statute provides for detention of a person who, in the "good faith" belief of the officer, "has committed an infraction or ordinance violation." [2] Ind.Code § 34-28-5-3. The Refusal to Identify Self statute then criminalizes the refusal to comply with an officer's lawful request under the statute authorizing detention. In this instance, although Starr was "stopped" when the vehicle in which he was a passenger was "stopped," there is no showing that Starr was stopped as a consequence of any conduct on his part. There was no reasonable suspicion that he had committed an infraction or ordinance violation, giving rise to an obligation to identify himself upon threat of criminal prosecution.

Accordingly, Starr did not fall within the purview of the Refusal to Identify Self statute. His conviction must be reversed.

Reversed.

MAY, J., and BARNES, J., concur.

---

**2.** This Good Faith Belief statute satisfies the reasonable suspicion requirement of the Indiana Constitution "where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur." *Baldwin v. Reagan*, 715 N.E.2d 332, 340 (Ind.1999).