

FILED
Sep 07 2017, 7:39 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deborah Markisohn
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kevin Dowdy,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | September 7, 2017<br><br>Court of Appeals Case No.<br>49A02-1612-CR-2679<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable John Christ,<br>Commissioner<br><br>Trial Court Cause No.<br>49G14-1510-F6-37975 |

**Brown, Judge.**

[1] In this interlocutory appeal, Kevin Dowdy appeals the trial court's order denying his motion to suppress evidence. He raises two issues which we consolidate and restate as whether the court erred in denying his motion to suppress. We affirm.

*Facts and Procedural History*

[2] On October 21, 2015, Indianapolis Metropolitan Police Officer Cameron Taylor was conducting traffic patrol and "just running license plates" while he was driving. Transcript Volume II at 8. He ran a license plate on a vehicle and the status for the registration plate "came up expired" on his mobile data terminal. *Id.* at 12. The return for information from the BMV included three or four pages, and Officer Taylor's computer terminal screen showed that the issue date was October 21, 2014, and the expiration date was October 21, 2015. He activated his lights and initiated a traffic stop because of the expired registration.

[3] Officer Taylor approached the vehicle and spoke to the occupants including Dowdy who was in the front passenger seat. Officer Taylor explained the reason for the stop, asked the driver for her driver's license and the vehicle registration, and also asked Dowdy if he "wouldn't mind giving [him] his identification." *Id.* at 14. Officer Taylor received their identifications or wrote down their names and dates of birth, ran the occupants' information, and discovered that there were warrants for Dowdy's arrest. He conducted a search of Dowdy and discovered a "receipt with pills in it" in his pocket. *Id.* at 16.

[4] On October 26, 2015, the State charged Dowdy with possession of a narcotic drug as a level 6 felony. On May 2, 2016, Dowdy filed a motion to suppress evidence and argued that the stop, detention, arrest, and seizure of the contraband was illegal.

[5] On July 26, 2016, the court held a suppression hearing. Officer Taylor testified that the return for information from the BMV is four pages and that:

> [T]here's a status that – it says status and then it will say active, inactive, suspended, or expired. I just look for that spot because I'm just – you know, I'm not trying to read every little detail about – I don't care when the plate was issued. I don't necessarily care when it was expired. I just look to see that it's expired according to the BMV because that's where I get my returns from.

*Id.* at 10-11. When asked if at any point it came to his attention that the license plate's expiration date was the same as the date of the actual traffic stop, he answered: "Somebody – I thought of it. I think it stood out to me obviously when I went to write the report." *Id.* at 15. He also indicated that someone who has a warrant takes priority over an expired registration. On cross-examination, Officer Taylor testified that his computer terminal screen showed that the issue date was October 21, 2014, and the expiration date was October 21, 2015. On redirect examination, he testified that the status for the vehicle registration was expired.

[6] On September 15, 2016, the court held a hearing and denied Dowdy's motion to suppress. The court stated:

After reviewing the case law and the facts, I do find that the officer's behavior was reasonable; that he did rely upon the computer transmission from the Bureau of Motor Vehicles that indicated that the license plate and registration . . . were expired.

What I'm seeing – what my recollection that the officer relied on was not just the dates but the submission from the Bureau of Motor Vehicles that the license was, in fact – that the registration was, in fact, expired.

I don't know if was [sic] a mistake of law on his part, but I think that there's a difficulty interpretation – of interpreting that law.

I tried to find what the code would state as to the expiration date and when that would – when that would happen and when registrations would expire, and the only statute is the statute submitted by Defense that, you know, speaks to when the expiration date is on a Saturday, Sunday or holiday time when the license branches would be closed.

I think it would require the officer to make some sort of legal interpretation. I don't know that it's automatically clear of what the expiration date would be based on that statute when it happened in this case on a Wednesday.

I think the officer's behavior was reasonable. I don't think that it is inherently unreasonable. I don't think it was a mistake of law or ignorance of the law. I think he relied reasonably upon the Bureau of Motor Vehicle's communication that the license plates and registration were expired on that vehicle.

Mr. Dowdy had a warrant for his arrest. And I think everything found thereafter flows from the warrant and the search once he's

taken into custody on that warrant. So I find the officer's behavior reasonable.

*Id.* at 32-33. Dowdy now brings this interlocutory appeal.

## *Discussion*

[7] The issue is whether the trial court erred in denying Dowdy's motion to suppress. The admission of evidence is entrusted to the trial court's sound discretion. *Robinson v. State*, 5 N.E.3d 362, 365 (Ind. 2014). *See also Kelly v. State*, 997 N.E.2d 1045, 1050 (Ind. 2013) (addressing a denial of a motion to suppress and holding that the admission of evidence is a matter entrusted to the trial court's sound discretion). "We review a trial court's denial of a defendant's motion to suppress deferentially, construing conflicting evidence in the light most favorable to the ruling, but we will also consider any substantial and uncontested evidence favorable to the defendant." *Robinson*, 5 N.E.3d at 365. "We defer to the trial court's findings of fact unless they are clearly erroneous, and we will not reweigh the evidence." *Id.* "When the trial court's denial of a defendant's motion to suppress concerns the constitutionality of a search or seizure, however, it presents a question of law, and we address that question de novo." *Id.*

[8] Dowdy argues that the registration was valid until midnight on October 21, 2015, and that his rights under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution were violated.

A. *Fourth Amendment*

[9] The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

[10] A law enforcement officer must have reasonable suspicion of criminal conduct in order to justify a traffic stop, which is a "seizure" for purposes of the Fourth Amendment. *Clarke v. State*, 868 N.E.2d 1114, 1118 (Ind. 2007) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968)). *See also Sanders v. State*, 989 N.E.2d 332, 335 (Ind. 2013) ("[A] traffic stop . . . is permissible where an officer has at least reasonable suspicion that a traffic law, or other law, has been violated."), *reh'g denied*. We make reasonable-suspicion determinations by looking at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing. *Armfield v. State*, 918 N.E.2d 316, 319 (Ind. 2009). In assessing the whole picture, we must examine the facts as known to the officer at the moment of the stop. *Clark v. State*, 994 N.E.2d 252, 264 (Ind. 2013). We review findings of reasonable suspicion de novo. *Id.* This is necessarily a fact-sensitive inquiry. *Id.*

[11]     Dowdy argues that the traffic stop violated the Fourth Amendment because Officer Taylor's justification for the stop was a mistake of law. He contends that, where there is no vehicular violation, a stop is not constitutionally permissible, that Officer Taylor simply relied on the designation of expired that appeared as part of the BMV records check, and that he failed to fully examine the BMV record to learn the date the registration was issued and the date it expired.

[12]     The State asserts that it does not and that it need not take a position regarding whether a vehicle registration issued by the BMV remains valid until midnight following the expiration date. It argues that Officer Taylor's on-the-spot evaluation was reasonable and that he could not have found the BMV return to be in error by a cursory review. It asserts that, before finding the BMV return to be incorrect, Officer Taylor would have had to notice a discrepancy between the status of expired and the math revealed by the issue and expiration dates and adopt the most-driver friendly resolution of a legal issue that, as Dowdy admits on appeal, has no clear answer in Indiana statutes. The State also contends that in any event the evidence found on Dowdy's person is admissible because the pre-existing arrest warrants sufficiently attenuated any taint, citing *Utah v. Strieff*, 136 S. Ct. 2056, 2059 (2016).[1]

---

[1] Because we decide that the stop was reasonable, we need not address the attenuation doctrine which can be applied under certain circumstances when an officer makes an unconstitutional investigative stop, learns during the stop that the suspect is subject to a valid arrest warrant, and proceeds to arrest the suspect and seize incriminating evidence during a search incident to that arrest. *See Strieff*, 136 S. Ct. at 2059-2064.

[13] The State cites to *Heien v. North Carolina*, in which the United States Supreme Court addressed whether a police officer's mistake of law can give rise to the reasonable suspicion necessary to uphold a seizure under the Fourth Amendment. 135 S. Ct. 530, 534 (2014). In that case, a police officer initiated a traffic stop after observing only the left brake light illuminate when a vehicle braked. *Id.* Heien, a passenger of the stopped vehicle, consented to a search, and police discovered cocaine. *Id.* The State charged Heien with attempted trafficking of cocaine. *Id.* at 535. Heien moved to suppress the evidence seized from the car, contending that the stop and search violated the Fourth Amendment, and the trial court denied the motion. *Id.* Heien pled guilty but reserved the right to appeal the suppression decision. *Id.*

[14] The relevant provision of the vehicle code in *Heien* provided that a car must be:

> equipped with a stop lamp on the rear of the vehicle. The stop lamp shall display a red or amber light visible from a distance of not less than 100 feet to the rear in normal sunlight, and shall be actuated upon application of the service (foot) brake. The stop lamp may be incorporated into a unit with one or more other rear lamps.

*Id.* (quoting N.C. Gen. Stat. Ann. § 20-129(g) (2007)). The North Carolina Court of Appeals reversed and held that the initial stop was not valid because driving with only one working brake light was not actually a violation of North Carolina law. *Id.* (citing 214 N.C. App. 515, 714 S.E.2d 827 (2011)).

[15] The State of North Carolina appealed, and the North Carolina Supreme Court reversed. *Id.* (citing 366 N.C. 271, 737 S.E.2d 351). Noting that the State had

chosen not to seek review of the Court of Appeals' interpretation of the vehicle code, the Court assumed for purposes of its decision that the faulty brake light was not a violation. *Id.* It concluded that, for several reasons, the police officer could have reasonably, even if mistakenly, read the vehicle code to require that both brake lights be in good working order, and noted that a nearby code provision required that all originally equipped rear lamps be functional. *Id.* (citing 366 N.C. at 282-283, 737 S.E.2d at 358-359).

[16] The United States Supreme Court observed that the ultimate touchstone of the Fourth Amendment is reasonableness. *Id.* at 536. "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 176, 69 S. Ct. 1302 (1949)). The Court observed that searches and seizures based on mistakes of fact can be reasonable and held:

> But reasonable men make mistakes of law, too, and such mistakes are no less compatible with the concept of reasonable suspicion. Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonably mistaken on either ground. Whether the facts turn out to be not what was thought, or the law turns out to be not what was thought, the result is the same: the facts are outside the scope of the law. There is no reason, under the text of the Fourth Amendment or our precedents, why this same result should be acceptable when reached by way of a reasonable mistake of fact, but not when reached by way of a similarly reasonable mistake of law.

*Id.* The Court also stated:

> Heien also contends that the reasons the Fourth Amendment allows some errors of fact do not extend to errors of law. Officers in the field must make factual assessments on the fly, Heien notes, and so deserve a margin of error. In Heien's view, no such margin is appropriate for questions of law: The statute here either requires one working brake light or two, and the answer does not turn on anything "an officer might suddenly confront in the field." Brief for Petitioner 21. But Heien's point does not consider the reality that an officer may "suddenly confront" a situation in the field as to which the application of a statute is unclear—however clear it may later become. A law prohibiting "vehicles" in the park either covers Segways or not, see A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 36-38 (2012), but an officer will nevertheless have to make a quick decision on the law the first time one whizzes by.

> Contrary to the suggestion of Heien and *amici*, our decision does not discourage officers from learning the law. The Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be *objectively* reasonable. We do not examine the subjective understanding of the particular officer involved. *Cf. Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 135 L.Ed.2d 89 (1996). And the inquiry is not as forgiving as the one employed in the distinct context of deciding whether an officer is entitled to qualified immunity for a constitutional or statutory violation. Thus, an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce.

*Id.* at 539-540. In applying the test of whether the mistake of law was reasonable to the facts, the Court stated:

Here we have little difficulty concluding that the officer's error of law was reasonable. Although the North Carolina statute at issue refers to "*a* stop lamp," suggesting the need for only a single working brake light, it also provides that "[t]he stop lamp may be incorporated into a unit with one or more *other* rear lamps." N.C. Gen. Stat. Ann. § 20-129(g) (emphasis added). The use of "other" suggests to the everyday reader of English that a "stop lamp" is a type of "rear lamp." And another subsection of the same provision requires that vehicles "have all originally equipped rear lamps or the equivalent in good working order," § 20-129(d), arguably indicating that if a vehicle has multiple "stop lamp[s]," all must be functional.

The North Carolina Court of Appeals concluded that the "rear lamps" discussed in subsection (d) do not include brake lights, but, given the "other," it would at least have been reasonable to think they did. Both the majority and the dissent in the North Carolina Supreme Court so concluded, and we agree. *See* 366 N.C., at 282-283, 737 S.E.2d, at 358-359; *id.*, at 283, 737 S.E.2d, at 359 (Hudson, J., dissenting) (calling the Court of Appeals' decision "surprising"). This "stop lamp" provision, moreover, had never been previously construed by North Carolina's appellate courts. *See id.*, at 283, 737 S.E.2d, at 359 (majority opinion). It was thus objectively reasonable for an officer in Sergeant Darisse's position to think that Heien's faulty right brake light was a violation of North Carolina law. And because the mistake of law was reasonable, there was reasonable suspicion justifying the stop.

*Id.* at 540.

[17] Dowdy states that there does not appear to be a single statute in the motor vehicle code which definitively controls the interpretation of when a vehicle's registration expires and does not point to a case addressing when a registration

expires. He points to Ind. Code § 9-18-2-50 and asserts that this statute indicates a vehicle's registration remains valid until midnight on the last day of the term of registration. Ind. Code § 9-18-2-50 is titled "Expiration date of registration; closure of license branch" and provides:

> If the date on which the registration of a vehicle expires is a day on which all license branches located in the county in which the vehicle is registered are closed, including:
>
> > (1) a Sunday; or
> >
> > (2) a legal holiday listed in IC 1-1-9-1;
>
> the registration expires at midnight on the date following the next day on which a license branch located in the county in which the vehicle is registered is open for business.[2]

[18] Even assuming that Officer Taylor was ultimately mistaken in his belief that a violation occurred, the traffic stop was based upon a good faith, reasonable belief that a statutory infraction had occurred. No case has cited Ind. Code § 9-18-2-50. Officer Taylor testified that he was driving and running license plates, ran the plate, received three or four pages of information, and that the status for the registration came back as expired. He also testified that he looks to see if the registration is "expired according to the BMV because that's where I get my returns from." Transcript Volume II at 11. Under these circumstances, we

---

[2] The day Officer Taylor stopped Dowdy, October 21, 2015, was a Wednesday.

conclude that the totality of the circumstances presented a particularized and objective basis for a stop and that the stop was reasonable and did not violate Dowdy's rights under the Fourth Amendment.[3] *See Sanders*, 989 N.E.2d at 336 (holding that the apparent infraction for which the defendant's vehicle was initially stopped did in fact exist at law, and although the officer was ultimately mistaken in his belief that a violation occurred, the traffic stop was based upon a good faith, reasonable belief that a statutory infraction had occurred and thus the Court was unable to say that the traffic stop was not lawful); *Croom v. State*, 996 N.E.2d 436, 442 (Ind. Ct. App. 2013) (citing *Sanders* and concluding that an officer was concerned that the defendant was breaking the law, reasonably stopped the defendant in order to obtain more information, and that the officer's good-faith reasonable belief that a violation occurred was sufficient to establish reasonable suspicion under the Fourth Amendment), *reh'g denied*, *trans. denied*.[4]

---

[3] Dowdy cites *Gunn v. State*, 956 N.E.2d 136 (Ind. Ct. App. 2011), and asserts that Officer Taylor lacked reasonable suspicion for the traffic stop because his belief that the registration was expired was a mistake of law. In *Gunn*, an officer believed that turning left into a lane other than the lane in the right half of the roadway closest to the center line was a traffic infraction, observed a vehicle make such a turn, and initiated a traffic stop. 956 N.E.2d at 138. We examined Ind. Code § 9-21-8-21, which governs the manner in which to make a turn at an intersection, and held that the statute does not specify which lane the driver must enter if there is more than one lane for traffic in that direction and that the only requirement was that the driver must enter a lane to the right of the center lane. *Id.* at 140. We held that "although an officer's good faith belief that a person has committed a violation will justify a traffic stop, an officer's mistaken belief about what constitutes a violation does not amount to good faith." *Id.* Here, unlike in *Gunn*, the infraction for which Officer Taylor initially stopped the vehicle does in fact exist in law.

[4] Upon discovering that Dowdy had warrants for his arrest, Officer Taylor conducted a search of his person. Dowdy does not argue that the search that revealed the pills did not constitute a valid search incident to arrest.

[19]     To the extent Dowdy argues that, even if the registration had expired, Officer Taylor exceeded his authority in detaining the individuals and running their identifications, we disagree. Ind. Code § 9-18-2-7 governs the registration of vehicles and provides that a person that operates a vehicle with an expired license plate commits a class C infraction.[5] Ind. Code § 34-28-5-3 provides:

> (a) Whenever a law enforcement officer believes in good faith that a person has committed an infraction or ordinance violation, the law enforcement officer may detain that person for a time sufficient to:
>
> > (1) inform the person of the allegation;
> >
> > (2) obtain the person's:
> >
> > > (A) name, address, and date of birth; or
> > >
> > > (B) driver's license, if in the person's possession; and
> >
> > (3) allow the person to execute a notice to appear.

---

[5] Specifically, Ind. Code § 9-18-2-7 provides in part:

> (b) Except as provided in IC 9-18-12-2.5, a person that owns or operates a vehicle may not operate or permit the operation of a vehicle that:
>
> > (1) is required to be registered under this chapter; and
> > (2) has expired license plates.
> >
> > \* \* \* \* \*
>
> (h) A person that operates or permits the operation of a motor vehicle in violation of subsection (b) commits a Class C infraction.

[20]     In *Starr v. State*, we addressed an officer's interactions with a passenger of a vehicle following a traffic stop. 928 N.E.2d 876, 878 (Ind. Ct. App. 2010), *trans. denied*. Specifically, we addressed whether a vehicular passenger is subject to the same criminal penalties by refusing to identify himself when, unlike the driver of the vehicle, there was no reasonable suspicion that he had committed an infraction or violated an ordinance. We discussed Ind. Code § 34-28-5-3.5 which provides:

> A person who knowingly or intentionally refuses to provide either the person's:
>
> > (1) name, address, and date of birth; or
>
> > (2) driver's license, if in the person's possession;
>
> to a law enforcement officer who has stopped the person for an infraction or ordinance violation commits a Class C misdemeanor.

[21]     We held that "[t]here was no reasonable suspicion that he had committed an infraction or ordinance violation, giving rise to an obligation to identify himself upon threat of criminal prosecution," and we reversed the conviction. *Starr*, 928 N.E.2d 876 at 880. However, we also stated:

> Certainly, a police officer is free to request identification without implicating the Fourth Amendment. *Hiibel v. Sixth Judicial Dist. Ct. of Nev.*, 542 U.S. 177, 185, 124 S. Ct. 2451, 159 L.Ed.2d 292 (2004). As such, we do not suggest that an officer is constrained to request only the driver's identification during a traffic stop. In the vast majority of cases, a person will choose to comply when

> identification is requested. Nonetheless, as a general proposition, "[c]itizens are not required to interact with police officers." *Greno v. State*, 861 N.E.2d 1232, 1237 (Ind. Ct. App. 2007) (citing *Illinois v. Wardlow*, 528 U.S. 119, 120 S. Ct. 673, 145 L.Ed.2d 570 (2000)).

*Id.* at 879-880.

[22] We conclude that Officer Taylor's asking Dowdy if he "wouldn't mind giving [him] his identification," Transcript Volume II at 14, did not violate Dowdy's rights under the Fourth Amendment. *See Starr*, 928 N.E.2d at 879-880; *United States v. Muriel*, 418 F.3d 720, 726 (7th Cir. 2005) (holding that passengers may be questioned without reasonable suspicion).

B. *Article 1, Section 11*

[23] Article 1, Section 11 of the Indiana Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

[24] Although its text mirrors the federal Fourth Amendment, we interpret Article 1, § 11 of our Indiana Constitution separately and independently. *Robinson*, 5 N.E.3d at 368. "When a defendant raises a Section 11 claim, the State must show the police conduct 'was reasonable under the totality of the circumstances.'" *Id.* (quoting *State v. Washington*, 898 N.E.2d 1200, 1205-1206

(Ind. 2008), *reh'g denied*). "The focus of the exclusionary rule under the Indiana Constitution is the reasonableness of police conduct." *Hardister v. State*, 849 N.E.2d 563, 573 (Ind. 2006). "We consider three factors when evaluating reasonableness: '1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.'" *Robinson*, 5 N.E.3d at 368 (quoting *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005)).

[25] With respect to the degree of concern, suspicion, or knowledge that a violation has occurred, the BMV report listed the vehicle registration as expired and operating a vehicle with an expired registration is an infraction that exists. As for the degree of intrusion, we cannot say that *Starr*, which is relied upon by Dowdy and discussed above, warrants a finding that the degree of intrusion was high. The record reveals that Officer Taylor asked Dowdy if he "wouldn't mind giving [him] his identification" and that Officer Taylor either received his identification or wrote down his name and date of birth. Transcript Volume II at 14. With respect to the extent of law enforcement needs, we observe that a police officer's ability to search for outstanding warrants is important for officers to ensure the safety of the public. Further, upon discovering that Dowdy had warrants for his arrest, Officer Taylor conducted a search of Dowdy's person. As noted, Dowdy does not argue that the search that revealed the pills did not constitute a valid search incident to arrest. Under the totality of the circumstances, we conclude that the stop and search was reasonable and did

not violate Dowdy's rights under Article 1, Section 11 of the Indiana Constitution.[6] *See Croom*, 996 N.E.2d at 442-443 (observing that the lack of registration information made an officer suspicious that the defendant's car was not validly registered, balancing the high degree of concern, suspicion, or knowledge that a violation occurred and the needs of law enforcement against the low degree of intrusion, and concluding that the officer had reasonable suspicion under Article 1, Section 11).

## Conclusion

For the foregoing reasons, we affirm the denial of Dowdy's motion to suppress.

Affirmed.

May, J., and Pyle, J., concur.

---

[6] Dowdy argues that, once Officer Taylor verified the registration was still valid, nothing in the record justified any further inquiry as the reason for the traffic stop no longer existed. The record reveals, that when asked if at any point it came to his attention that the license plate's expiration date was the same as the date of the actual traffic stop, Officer Taylor answered: "Somebody – I thought of it. I think it stood out to me obviously when I went to write the report." Transcript Volume II at 15. However, Dowdy does not point to the record to suggest that Officer Taylor determined that the registration was valid prior to requesting his identification or discovering that there were warrants for his arrest.