## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 25 2018, 9:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

John Pinnow
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Micah Lminggio,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 25, 2018<br><br>Court of Appeals Case No.<br>79A02-1710-PC-2443<br><br>Appeal from the Tippecanoe<br>Superior Court<br><br>The Honorable Randy J. Williams,<br>Judge<br><br>Trial Court Cause No.<br>79D01-1501-PC-1 |

**Barnes, Judge.**

# Case Summary

[1] Micah Lminggio appeals the post-conviction court's denial of his petition for post-conviction relief. We affirm.

# Issue

[2] Lminggio raises one issue, which we restate as whether he received the effective assistance of trial counsel.

# Facts

[3] The facts as stated in Lminggio's direct appeal follow:

> [O]n the evening of April 17, 2013, Detective Natalie Lovett of the Lafayette Police Department (LPD) conducted surveillance of the house at 232 Chestnut Street in Lafayette. She was directed to that location by an Officer Withers, also of the LPD. Officer Withers informed Detective Lovett that he had received a phone call from J.A., who lived at that address. Officer Withers and Detective Lovett had received information from J.A. on previous occasions that proved reliable. On this evening, Officer Withers informed Detective Lovett that J.A. had called "and said that there was some type of drug activity at the house." Transcript at 335. J.A. provided a description of a vehicle that was at the house at that time and involved in drug activity.
>
> When Detective Lovett arrived on the scene she observed the subject vehicle parked in front of the house at 232 Chestnut. She parked her unmarked car several houses down the street and climbed into the backseat so that she could observe what was happening, while at the same time remaining hidden from view. She watched as two black males walked to the vehicle, one of whom she described as short and wearing a white T-shirt, and later identified as Lminggio. The men opened the door of the

subject vehicle and the interior lights flipped on. A third person, later identified as Bridget Gulliford, sat in the back seat. Detective Lovett watched as Lminggio walked around to the hood of the car and raised it. At that point "[h]e was standing kind of over the hood kind of in the front uh driver's side quarter panel area, uh, and then the other black male was on the passenger side of the hood." *Id.* at 109.

Detective Lovett could not see what the men were doing while they were in front of the car. After a short time they shut the hood and got back into the vehicle, with Lminggio getting into the driver's seat. The other man, later identified as Steven Allen, got into the front passenger seat. They sat there for approximately five minutes before a van arrived on the scene and parked in front of the subject car. A white male exited the van at the same time Lminggio exited his vehicle. The two walked toward the house and out of Detective Lovett's line of view. When both men returned to their vehicles a short time later, the white male got into the van and Lminggio got back into the driver's seat of his car. The van immediately drove away. After a short time, so, too, did Lminggio's car. Lminggio drove past Detective Lovett's vehicle and the detective turned around to watch it. She saw Lminggio's vehicle approach and then stop at a stop sign. Lminggio sat at the stop sign for "maybe thirty seconds", then put on his right turn signal and turned right. *Id.* at 112. Detective Lovett determined that the car had committed a traffic infraction by failing to signal his turn 200 feet in advance of making it. At that time, she advised nearby officers to execute a traffic stop of Lminggio's vehicle. Shortly thereafter, Lminggio's vehicle was stopped by LPD Officer Scott Anderson. Officer Anderson was joined at the scene by Officer Adam Mellady.

Officers Anderson and Mellady approached the vehicle and asked Lminggio for his driver's license. Officer Anderson also obtained IDs from Allen and Gulliford. Officer Anderson was

familiar with Allen and knew that he had a criminal drug history. The officer also believed Gulliford might be the subject of a bench warrant.

While Officer Mellady remained with Lminggio's vehicle, Officer Anderson spoke with the dispatcher to determine whether Lminggio's license was valid and whether Gulliford was wanted on a bench warrant. He learned that Lminggio's license was valid and that Gulliford was not the subject of a bench warrant. By this time, other LPD officers had arrived on the scene, including Officers Bartholomy and Lamar.

When the other officers arrived, Officer Anderson decided to deploy his canine to conduct a drug sniff of Lminggio's vehicle. The vehicle's occupants were removed for the canine's safety and Officer Anderson walked the dog around Lminggio's vehicle. Approximately ten minutes had elapsed since the traffic stop was initiated. The canine had been trained to detect the scent of marijuana, crack and powdered cocaine, methamphetamine, and opiates. It alerted by the front passenger door, which indicated the presence of drugs. The officers detained Lminggio and his passengers and searched the vehicle. They found two handguns in the engine compartment of Lminggio's car. One, a loaded .38 caliber revolver, was hidden between the battery and the driver's side fender wall. The other was a loaded semiautomatic pistol, which was also found on the driver-side of the engine compartment.

Lminggio was placed under arrest, issued a traffic citation, and transported to jail. While in the rear seat of the squad car, Lminggio discarded three balls of crack cocaine near the seatbelt receptacle. The three balls were later determined to contain 9.15 grams of cocaine. Lminggio was charged with one count of dealing cocaine as a class A felony, one count of possession of cocaine as a class A felony, one count of theft/receiving stolen property, as a class D felony, two counts of carrying a handgun

without a license, a class A misdemeanor, two counts of carrying a handgun by a convicted felon, a class C felony, and one count of serious violent felon in possession of a firearm, a class B felony. The State later added a habitual offender allegation.

Two separate trials ensued. Following the first, a jury trial, Lminggio was convicted as charged of dealing in a narcotic drug as a class A felony, possession of a narcotic drug as a class A felony, and two counts of carrying a handgun without a license as class A misdemeanors. He was acquitted of the charge of theft/receiving stolen property. After the first trial but prior to the second trial, the State dismissed several counts, as well as the habitual offender allegation. Following a bench trial, Lminggio was convicted of the remaining charges, i.e., two counts of serious violent felon in possession of a firearm as a class B felony. After merging and vacating several of the charges of which Lminggio was found guilty, the trial court entered judgment of conviction on one count of dealing in a narcotic drug (Count I) and two counts of unlawful possession of a firearm by a serious violent felon (amended Counts VIII and IX). The court sentenced Lminggio to thirty-four years on Count I and fourteen years each on amended Counts VIII and IX. The court ordered that the sentences for amended Counts VIII and IX should run concurrently with each other and consecutive to the sentence imposed for Count I, for a total executed sentence of forty-eight years.

*Lminggio v. State*, No. 79A04-1312-CR-635, slip op. at 2-6 (Ind. Ct. App. Aug. 11, 2014).

[4] On direct appeal, Lminggio argued that the trial court erred by admitting evidence obtained following the traffic stop because "the stop was completed before a reasonable suspicion arose and consequently the police lacked a valid

basis to conduct the dog sniff of his vehicle." *Id.* at 6. We held that the argument was waived because trial counsel did not object to the introduction of the first gun and failed to identify specific grounds for his objections to the cocaine and second gun. Consequently, we affirmed Lminggio's convictions.

[5] Lminggio filed a petition for post-conviction relief in January 2015, which he later amended. Lminggio alleged that he was denied the effective assistance of trial counsel when his trial counsel did not "contemporaneously object at trial, based on the Fourth and Fourteenth Amendments to the United States Constitution, and Article One, Section Eleven of the Indiana Constitution, to evidence obtained and seized after a traffic stop, and to evidence that was the poisoned fruit of the illegal detention, search and seizure." Appellant's App. Vol. II p. 24. After a hearing, the post-conviction court entered findings of fact and conclusions thereon denying Lminggio's petition. Lminggio now appeals.

## Analysis

[6] Lminggio appeals the post-conviction court's denial of his petition for post-conviction relief. A court that hears a post-conviction claim must make findings of fact and conclusions of law on all issues presented in the petition. *Pruitt v. State*, 903 N.E.2d 899, 905 (Ind. 2009) (citing Ind. Post-Conviction Rule 1(6)). "The findings must be supported by facts and the conclusions must be supported by the law." *Id.* Our review on appeal is limited to these findings and conclusions. *Id.* Because the petitioner bears the burden of proof in the post-conviction court, an unsuccessful petitioner appeals from a negative

judgment. *Id.* (citing P-C.R. 1(5)). "A petitioner appealing from a negative judgment must show that the evidence as a whole 'leads unerringly and unmistakably to a conclusion opposite to that reached by the trial court.'" *Id.* (quoting *Allen v. State*, 749 N.E.2d 1158, 1164 (Ind. 2001), *cert. denied*). Under this standard of review, "[we] will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion." *Id.*

[7] Lminggio appeals the post-conviction court's denial of his claim of ineffective assistance of trial counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his or her counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)), *cert. denied*.

[8] A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *McCullough v. State*, 973 N.E.2d 62, 74 (Ind. Ct. App. 2012), *trans. denied*. "[A] defendant must offer strong and convincing evidence to overcome this presumption." *Id.* Isolated poor strategy,

inexperience, or bad tactics do not necessarily constitute ineffective assistance. *Id.*

[9] To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *French*, 778 N.E.2d at 824. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Failure to satisfy either prong will cause the claim to fail. *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006). Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

[10] Lminggio argues on appeal that his trial counsel was deficient for failing to properly object to the admission of the firearms and drug evidence. Lminggio argues that, if his trial counsel had properly objected, his objection would have been sustained pursuant to both the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution.

## I. Fourth Amendment

[11] "The Fourth Amendment provides protection against unreasonable searches and seizures by generally prohibiting such acts without a warrant supported by probable cause." *Robinson v. State*, 5 N.E.3d 362, 367 (Ind. 2014) (citing U.S. Const. amend. IV; *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013)). "The *Terry* stop, perhaps the most popular exception to this rule, permits an officer to 'stop and briefly detain a person for investigative purposes if the officer has a

reasonable suspicion supported by articulable facts that criminal activity "may be afoot," even if the officer lacks probable cause.'" *Id.* (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868 (1968))). "Such a stop 'must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.'" *Id.* (quoting *Armfield v. State*, 918 N.E.2d 316, 319 (Ind. 2009)).

[12] "It is unequivocal under our jurisprudence that even a minor traffic violation is sufficient to give an officer probable cause to stop the driver of a vehicle." *Austin v. State*, 997 N.E.2d 1027, 1034 (Ind. 2013). Moreover, "a reasonable narcotics dog sweep is not a search for the purposes of the Fourth Amendment." *Id.* "[S]uch a sweep is an unreasonable investigatory detention if the motorist is held for longer than necessary to complete the officer's work related to the traffic violation and the officer lacks reasonable suspicion that the motorist is engaged in criminal activity." *Id.* The critical question is not whether the sniff occurs before or after the officer issues a ticket, but whether conducting the sniff prolongs or adds time to the stop. *Rodriguez v. United States*, __ U.S. __, 135 S. Ct. 1609, 1616 (2015). The burden is on the State to show the time for the traffic stop was not increased due to a canine sweep. *Wells v. State*, 922 N.E.2d 697, 700 (Ind. Ct. App. 2010), *trans. denied*.

[13] Lminggio argues that the traffic stop time was unnecessarily increased to conduct a warrant check on the passengers. The post-conviction court entered findings of fact and conclusions thereon that the traffic stop was not prolonged. The United States Supreme Court held in *Rodriguez* that "[b]eyond determining

whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.'" *Rodriguez*, 135 S. Ct. at 1615 (quoting *Illinois v. Caballes*, 543 U.S. 405, 408, 125 S. Ct. 834, (2005)). "Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* Lminggio argues that such inquiries have not been expanded to checking for outstanding warrants against passengers. Our supreme court held in *Campos v. State*, 885 N.E.2d 590, 597 n.1 (Ind. 2008), that an officer can ask a passenger for identification during a traffic stop. Despite *Campos*, Lminggio argues that the officer could not check to see if there were outstanding warrants on his passengers. Numerous courts have held otherwise. *See, e.g.*, *United States v. Rice*, 483 F.3d 1079, 1084 (10th Cir. 2007) (holding that "an officer may ask for identification from passengers and run background checks on them as well"); *United States v. Diaz-Castaneda*, 494 F.3d 1146, 1153 (9th Cir. 2007) (holding that officer's check of the passenger's driver's license or identification card with radio dispatch did not violate the Fourth Amendment), *cert. denied*. Given that the officer was permitted to ask passengers for identification, it would be illogical that the officer could not also run a background check on the passenger to see if the passenger had an active arrest warrant.

[14] Here, after obtaining Lminggio and the passengers' identifications, the officer learned that one of the passengers was listed in a computerized database as having an outstanding warrant out of Howard County. The officer asked

dispatch to contact Howard County to confirm the existence of the warrant. While waiting on that confirmation, the officers removed the occupants from the vehicle and walked the dog around the vehicle. The dog indicated the presence of drugs. The time from the initial stop to the time that the dog alerted to the presence of narcotics was ten to twelve minutes. The traffic stop was not prolonged by the dog sweep, and the post-conviction court's finding is not clearly erroneous.[1] Consequently, the dog sweep did not violate Lminggio's Fourth Amendment rights. Even if his trial counsel had objected, Lminggio has failed to show a reasonable probability that the objection would have been sustained and that the result of the proceeding would have been different.

## II. Indiana Constitution

[15] Although its text mirrors the federal Fourth Amendment, we interpret Article 1, Section 11 of our Indiana Constitution separately and independently. *Robinson*, 5 N.E.3d at 368. When a defendant raises a Section 11 claim, the State must show the police conduct "was reasonable under the totality of the circumstances." *Id.* "We consider three factors when evaluating reasonableness: '1) the degree of concern, suspicion, or knowledge that a

---

[1] Lminggio also relies on *State v. Gray*, 997 N.E.2d 1147 (Ind. Ct. App. 2013), *trans. denied*. However, we do not find *Gray* applicable here. In *Gray*, the officer "chose not to run the standard license/warrant check or report Gray's information to dispatch prior to the free-air sniff . . . ." *Gray*, 997 N.E.2d at 1150. We concluded that the traffic stop was delayed by the dog sniff. Here, however, the officer ran a standard license/warrant check, and the traffic stop was not delayed by the dog sniff.

violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.'" *Id.* (quoting *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005)).

[16] The degree of concern, suspicion, or knowledge that a violation had occurred weighs in favor of the State. The officer had observed a traffic violation. Further, the officers had a high degree of suspicion that the vehicle's occupants were involved in dealing drugs based on a tip from a source that had provided reliable information in the past.

[17] The degree of intrusion the method of the search or seizure imposed on the citizen's ordinary activities also weighs in the State's favor. There is no dispute that Lminggio was validly stopped for a traffic violation. While the officer was waiting for clarification from dispatch on a possible outstanding warrant on one of Lminggio's passengers, he removed the occupants from the vehicle and walked his drug dog around the vehicle. The traffic stop was not delayed by the dog sweep.

[18] As for the extent of law enforcement needs, this factor also weighs in favor of the State. We noted in *Dowdy v. State*, 83 N.E.3d 755, 765 (Ind. Ct. App. 2017), that "a police officer's ability to search for outstanding warrants is important for officers to ensure the safety of the public." While waiting on clarification regarding the possible outstanding warrant, the officer walked his drug dog around the vehicle, and the officers had some indication that the occupants of

the vehicle may have been dealing drugs. "[T]he trafficking of illegal drugs [is] frequently associated with violence and no simpler method exists for detection of hidden drugs than a dog sniff." *State v. Gibson*, 886 N.E.2d 639, 643 (Ind. Ct. App. 2008).

Under the totality of the circumstances, we conclude that the stop and search was reasonable and did not violate Lminggio's rights under Article 1, Section 11 of the Indiana Constitution. *See, e.g., Austin*, 997 N.E.2d at 1037 (holding that a narcotics drug sweep did not violate the Indiana Constitution); *Dowdy*, 83 N.E.3d at 765 (finding no Indiana Constitution violation where the passenger in a vehicle was arrested on an outstanding warrant). Even if his trial counsel had objected, Lminggio has failed to show a reasonable probability that the objection would have been sustained and that the result of the proceeding would have been different. The post-conviction court's finding is not clearly erroneous.

# Conclusion

The post-conviction court properly denied Lminggio's claim of ineffective assistance of trial counsel. We affirm.

Affirmed.

Vaidik, C.J., and Pyle, J., concur.